| | |
|---|---|
| CHRISTOPHER P. BURKE, ESQ.<br>Nevada Bar No.: 004093<br>*attycburke@charter.net*<br>702 Plumas St.<br>Reno, Nevada  89509<br>(775) 333-9277<br>Attorney for Debtors:<br>Christopher Michael Marino<br>Valerie Margaret Marino | ***ECF FILED ON 2/05 /16*** |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In Re:                                                           )<br>                                                                    )<br>CHRISTOPHER MICHAEL MARINO       )<br>and VALERIE MARGARET MARINO        )<br>                                                                    )<br>                                                                    )<br>          Debtors.                                            )<br>_____) | BK-N-13-50461-BTB<br>Chapter 7 |

**REPLY TO OPPOSITION TO MOTION TO REOPEN CHAPTER 7 UNDER 11 USC §350 AND FRBP RULE 5010 TO HOLD CREDITOR IN CONTEMPT AND FOR SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION 11 USC §524(a)(2)**

   COMES NOW, Debtors,  CHRISTOPHER MICHAEL MARINO and VALERIE MARGARET MARINO, ("Debtors"or "Mr. and Mrs. Marino"), by and through their counsel, Christopher P. Burke, Esq., ("Burke"), and Replies to the Opposition to Debtor's Motion to Reopen Chapter 13 Case and for Order to Show Cause, filed by Ocwen Loan Servicing LLC ("Ocwen") through its counsel, Wright, Finlay, & Zak, LLP.

**I**
**ARGUMENT**

   Ocwen's opposition makes four points. First, that some of the collection letters it sent had disclaimers.  Second, that as a secured creditor, Ocwen had the right to proceed in rem.  Third, that the notices were sent to comply with federal law. And fourth, only minimal damages should be awarded. As shown below, all of these claims lack merit.

**1. False Statements**.

   To begin with, Ocwen incorrectly states the Marinos "still reside in the Property." (Opp. p. 3 ln. 11).  However, the Marinos have not resided on the property located at 780

1

Beaver Creek Circle, Verdi, California ("Beaver Creek Circle") since 2011. (Ex. 'A' - Decl. C. Marino)[1]. Thus, the Marino's motion for contempt should be granted based upon that misstatement alone. Why? Because the point is, if they were still residing there or intending to keep the property, Nationstar's statements would be permissible. But since they have not lived there for years, the statements are not permissible.

Second, Ocwen admits that some collection letters had no disclaimer. For instance, the force placed insurance collection letters have no disclaimer. (See Ex. "D", "G", "O", "P" and "Q"). In these situations, Courts have held that insurance letters sent by a creditor that stated, "at your expense, we have purchased insurance to protect our interest" were also aimed at collecting on creditor's debt, as opposed to merely being a service provided to the debtors. *In re Perviz*, 302 B.R. 357, 366 (Bankr. N.D. OH 2003).

**2. Ocwen violated the discharge injunction:**

Did Ocwen violate the discharge injunction? Despite arguments by Ocwen that some of its statements had disclaimer language, case law is overwhelmingly in favor of Mr. And Mrs. Marino even in those types of situations. Why? Because, "[t]he discharge injunction survives the bankruptcy case and applies permanently with respect to every debt that is discharged." *In re Garske*, 287 BR 537, 542 (9th Cir. BAP 2002). And Courts have made it clear, when a debtor surrenders property, receives a discharge, and continues to receive collection letters from mortgage companies, it violates the discharge injunction. See *In re Nassoko*, 405 BR 515 (S.D. NY. 2009). The collection letters sent to the Marinos, reveal that Ocwen was continually seeking payment from them even after their discharge. And demand for payment of discharged debts is prohibited. *In re Brown*, 481 BR 351, 358, n. 10 (Bankr. W.D. Pa. 2012). As such, Ocwen should be held in contempt.

Regardless, the few generic disclaimers it does have do not save Ocwen. And

---

1. Declaration will be supplemented.

2

amazingly, most of these disclaimers state "if" you filed.  In other words, Ocwen did not even know if the Marinos filed bankruptcy, or even cared to look into it, while relentlessly sending collection letter after collection letter.  Finally, these collection letters are replete with wording such as "amount due," "your new payment", "total charges", "you must pay" and "payment date" amongst other requests for payment. (See Ex. "B", "C", "D", "E", "F", "G", "N" "O", "Q", "R", "V" and "W").

**3.  Disclaimer Language**.

Disclaimer language does not help Ocwen.  It cites to four cases in its motion.  A review of each, shows it does not apply in this situation.  To begin with, *In re Lemieux*, 520 BR 361 (Bankr.D.Mass. 2014) involved the debtor filing an adversary, and the mortgage companies moving to dismiss the complaint.  There, the Court dismissed Plaintiff's claim regarding being sent monthly mortgage statements because they made "no demand for payment" and "does not reference any amounts due." *Id* at 367.  But the Court did not dismiss their claim requesting payment for  insurance because those mailings did not contain any disclaimer.

Next, Ocwen surprisingly cites to *In re Nordlund* BR 494 (Bankr. E.D. Ca. 2011).  However, in *Nordland*, the Court actually sanctioned the mortgage company $40,000 in emotional distress damages for relentlessly sending 24 letters, even if some were not collection letters. *Id* at 507 (and over $35,000 in attorney fees).  Notably, the *Nordlund* court pointed out that the bank correspondence that included the FDCPA Debt Validation Notices, obviously "was an attempt to collect a debt, a discharged debt." *Id* at 518. In this case, not surprisingly, Ocwen included the debt validation notice numerous times.  (See Ex. "J", "M", "N", "O", "P", "R", "U" and "W").

Ocwen also cites to *In re Ramirez*, 280 BR 252 (Bankr. CD. Cal. 2002) for support.  However, this also does not help Ocwen, as it involved a debtor seeking to retain a vehicle he was paying on. *Id* at 254-55.  Finally, the case of *In re Mele*, 486 BR 546 (Bankr. N.D. Ga. 2013) is not relevant either.  In *Mele*, unlike here, the debtor

1  wanted to keep the home and was residing there! *Id* at 549.

2  Here, even if some of the letters sent to the debtors stated, "If you received a
3  bankruptcy discharge that included this debt, this notice is not intended and does not
4  constitute an attempt to collect a debt against your personally . . .", this type of vague
5  general wording has not been held to protect a creditor from sanctions. See *In re*
6  *Harlan*, 402 BR 703, 716 (Bankr. W.D. Pa. 2009). Why? Because in its letters, despite
7  any disclaimer, Ocwen is clearly asking for money.

8  Courts have found, that these types of statements and letters can "be confusing
9  and deceptive. . . [and] would confuse the unsophisticated consumer. The letter is
10 inherently contradictory. It purports to tell the [debtors, their] 'personal liability on the
11 note may be discharged, dismissed, or subject to an automatic stay,' but at the same time
12 asks for a substantial payment in 'settlement.' " *In re Donnelly-Tovar*, 945 F.Supp. 2nd
13 1037, 1047 (D. Neb. 2013) (FDCPA).

14 Notably, in these statements there is no reference to any foreclosure, or any
15 explicit statement that Mr. and Mrs. Marino have no obligation to pay the amount
16 secured by the lien. Ocwen's statements provide that its records indicate the obligation
17 "has been discharged, dismissed or is subject to an automatic stay of bankruptcy order,"
18 without stating which of those alternatives apply. In fact, the statements vaguely note
19 that its debt may be either discharged, dismissed, or subject to an automatic stay. In
20 other words, Ocwen never even bothered to check and see if the Marinas filed
21 bankruptcy. Thus, contrary to Ocwen's assertions, the statements do not state
22 unequivocally that the plaintiff has no obligation to pay on the purported "note." When
23 presented with these contradictory and inconsistent statements, an unsophisticated
24 consumer would be uncertain of the nature and amount of debt she actually owed,
25 unaware of the consequences of either payment or nonpayment, and would be left
26 "scratching [her] head upon receipt of such a letter." *See, e.g., Avila v. Rubin*, 84 F.d
27 222, 226 (7th Cir. 1996).

28                                        4

1    As one court stated, the creditor's "argument . . . is disingenuous, if not specious.
2 Its characterization of the correspondence as a simple attempt to offer the plaintiff an
3 opportunity to obtain a release of the lien is similarly untenable.  The letter clearly asks
4 for a substantial amount of money.  An unsophisticated consumer would reasonably
5 assume there was some sort of obligation connected to the request.  A fair reading of the
6 letter shows that [creditor] misrepresents the character or amount of plaintiff's debt and
7 fails to comply with other requirements." *Donnelly-Tovar* at 1048.

8    Unconvincingly, the creditor "relies on the sort of 'clever arguments' and
9 'technical loopholes' that courts have rejected in recent cases. . . If the letter is not an
10 attempt to collect a debt, then it can only be an attempt to defraud or extort money from
11 a person with no obligation to pay it or solicitation of a gift.  A disclaimer stating that the
12 letter 'is not an attempt to collect a debt,' does not make that true, especially in view of
13 indications on the face of the document that the communication is intended to obtain
14 money and is connected to a present or former obligation to pay an indebtedness. . . The
15 collection letter at issue here is at best confusing to an unsophisticated consumer and at
16 worst an intentionally misleading attempt to induce unsuspecting consumers into
17 paying money on nonexistent debts." *Id.*

18    The existence of disclaimer language will not serve to insulate an otherwise
19 improper demand for payment. *In re Draper*, 237 BR 502, 505 (Bankr. M.D. Fla. 1997)
20 (monthly invoices that set forth the *amount of payments past due* and asked the debtor
21 to remit this amount were geared toward collection of a debt, notwithstanding a
22 paragraph that acknowledged the debtors' bankruptcy and stated that the invoice was
23 being sent for informational purposes only).  Courts have noted, when 'AMOUNT NOW
24 DUE' and 'LAST DAY FOR PAYMENT' [are] screamed in all capital letters . . . while at
25 the same time having more subtle references to . . . rights possibly being limited by her
26 bankruptcy [it] is confusing at best . . ." *In re Law*, 2013 WL 4602858* at 6 (Bankr.
27 N.D. Tex).

28                                          5

"While the letter did eventually state (penultimate paragraph) that it was for 'informational purposes,' and did not require a response, this language is vague and could easily be interpreted to mean that the recipient did not have to acknowledge receipt of the letter but remained obligated to make a payment. . . [thus] it is wholly ambiguous. It does not explicitly state that an individual who is currently or who was in bankruptcy need *not* make a payment. On its face, the letter appears designed to collect a debt and to be designed to encourage an uneducated recipient to make a payment." *Nassoko* at 524.

Further, the mailing of mortgage loan statements that refers a debtor to payment coupons for the "current due date" is a violation of the discharge injunction, despite the *inclusion* of language that the statement was not a demand for payment. *In re Bruce*, 2000 WL 33673773 at *3 (Bankr. MD. N.C.). "[T]he constant communications regarding 'loss mitigation' options, and the ARM Notices that continued to remind [debtor] of the changing *interest rate, payment amount, payment due date, and outstanding principle balance due*, . . . is a larger course of conduct intended by [creditor] to coerce [debtors] into 'voluntarily' making payments or entering into a loan modification, or other repayment plan with [creditor]." *In re Biblolotti*, 2013 WL 2147949 (D. ED. Tex.). That is exactly the scenario in this case.

**3. Ocwen is not immunized because it retains its rem rights and was allegedly following federal and state law.**

Ocwen states it was following the law and only attempting to enforce its *in rem* right on the property. However, that alone does *not* immunize a creditor from violating the discharge injunction. Although some of the statements provide that the underlying obligation may be discharged, dismissed or stayed,[2] it implies that a payment is obligated, since it asks for payment of money, even providing instructions on payment.

---

2. Besides, a lot of Ocwen's statements do not even have a disclaimer. (See Ex. "D", "E", "F", "G", "J", "N", "O", "R", "U" and "W").

6

Further adding, that the purpose of these statements is an attempt to collect monies that were owed on the obligation. Therefore, Ocwen's purpose was not to enforce a security interest, but an attempt to collect the underlying loan debt. Clearly, the communication is intended to encourage the Marinos to pay a debt they are no longer obligated to pay.

Finally, Ocwen claims it was only following state and federal law so it cannot be held in contempt. However, a review of the regulations and statutes it cites does not protect Ocwen. To begin with, Ocwen sent a couple of foreclosure notices, but never foreclosed. Second, Ocwen would follow a foreclosure notice with an attempt to collect on the property or on force placed insurance. Third, as noted in *Nordlund*, the shear volume of mail overwhelmingly sought payment from the Marinos. "Taken together, in context, the Court construes the 24 letters as a deliberate attempt by the [creditor] to sow confusion and doubt as to whether it would recognize the debtors discharge." *Id* at 519. Thus becoming an obvious basis for Ocwen to be held in contempt. And as Ocwen acknowledges, actual damages, emotional distress damages, punitive damages, costs and attorney fees can be awarded for such violations. See *In re Nash, 464 BR 874,880* (9th Cir BAP 2012)

## II
## CONCLUSION

Ocwen sent the Marinos numerous collection letters. Most requested payment and many did not have disclaimers. But even if they had disclaimers, that does not relieve Ocwen of liability. Thus, Ocwen should be held in contempt and damages awarded.

DATED this 5TH day of February 2016.

/s/ CHRISTOPHER P. BURKE, ESQ.
CHRISTOPHER P. BURKE, ESQ.
702 Plumas St.
Reno, Nevada  89509
(775) 333-9277
Attorney for Christopher and Valerie Marino