WRIGHT, FINLAY & ZAK, LLP
Edgar C. Smith, Esq.
Nevada Bar No. 5506
Christopher Alan James Swift, Esq.
Nevada Bar No. 11291
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
(702) 666-0632; Fax: (702) 946-1345
cswift@wrightlegal.net
*Attorneys for Ocwen Loan Servicing, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE: | Case No.: 13-50461-BTB |
| CHRISTOPHER MICHAEL MARINO, and VALERIE MARGARET MARINO, | Chapter 7 |
| Debtors | **SUPPLEMENTAL OPPOSITION TO MOTION TO REOPEN CHAPTER 7 UNDER 11 USC § 350 AND FRBP Rule 5010 TO HOLD CREDITORS IN CONTEMPT AND FOR SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION [11 USC § 524(a)(2)]** |

COMES NOW secured creditor OCWEN LOAN SERVICING, LLC ("Ocwen") and submits its Supplemental Opposition to the Debtors CHRISTOPHER MICHAEL MARINO and VALERIE MARGARET MARINO's (collectively "Debtors") Motion to Reopen Chapter 7 Under 11 USC §350 and FRBP Rule 5010 to Hold Creditors in Contempt and for Sanctions for Violation of the Discharge Injunction 11 USC § 524(a)(2) (hereafter "Motion."), as this Court directed at the evidentiary hearing on this matter held on February 25th and 26th, 2016.

/././

/././

/././

/././

1

This Supplemental Opposition is based on the pleadings and papers on file with this Court, any facts subject to judicial notice, any argument this Court might consider, and any evidence this Court might entertain.

Dated: April 11, 2016        WRIGHT, FINLAY & ZAK, LLP

/s/ *Christopher A.J. Swift, Esq.*
Edgar C. Smith, Esq.
Nevada Bar No. 5506
Christopher Alan James Swift, Esq.
Nevada Bar No. 11291
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
(702) 666-0632; Fax: (702) 946-1345
cswift@wrightlegal.net
*Attorneys for Ocwen Loan Servicing, LLC*

## I. INTRODUCTION

After considering the evidence provided to this Court on February 25th and 26th, this Court asked for additional briefing on Ocwen's contention that some correspondence was sent to Debtors pursuant to Federal and California law and therefore cannot be construed as an attempt to collect a debt from the Debtors. Ocwen also contends that other correspondence sent to Debtors was solely to provide appropriate information, and that the correspondence contained appropriate disclaimers wherein Ocwen advised it was not attempting to collect a debt against the Debtors personally. Consequently, the correspondence does not violate the discharge injunction entered in this case.

Moreover, Debtors cannot recover punitive damages under 11 U.S.C. § 105(a). This principle is established by controlling Ninth Circuit case law, but Debtors ignore it. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1189-1190 (9th Cir. 2003) (citing to Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002). Thus, Debtors' request for approximately $500,000.00 in punitive damages is untenable as a matter of law.

///

///

## II. ARGUMENT

**A. OCWEN SENT INFORMATION TO DEBTORS THAT OCWEN WAS REQUIRED TO SEND BY CALIFORNIA AND FEDERAL LAW, AND THOSE COMMUNICATIONS DID NOT VIOLATE THE DISCHARGE INJUNCTION.**

Even if a debtor dischages a debt through bankruptcy, a lender is still permitted to send that debtor correspondence. Ramirez v. GMAC (In re Ramirez), 280 B.R. 252, 622-624 (Bankr. C.D. Cal. 2002); In re Garske, 287 B.R. 537, 543 (9th Cir. BAP 2002); In re Lemieux, 520 B.R. 361, 366 (Bankr. D. Mass. 2014); In re Nordlund, 494 B.R. 507, 516-517 (Bankr. E.D. Cal. 2011); Mele v. Bank of Am. Home Loans, 486 B.R. 546, 557-558 (Bankr. N.D. Ga. 2013) (holding that fifteen pieces of correspondence to debtor, including information correspondence, correspondence regarding the FHA status of the loan, responses, and statements, were not violations of the discharge order.)

**1. 12 CFR §1024.37(c) OBLIGATES OCWEN TO NOTIFY THE BORROWER ABOUT FORCE-PLACED INSURANCE.**

Pursuant to 12 CFR §1024.37(c), a servicer is required to send a borrower certain notices prior to the servicer assessing any premium charge or fee related to force-placed insurance. 12 CFR §1024.37(c) states:

> Requirements before charging borrower for force-placed insurance.
> (1) In general. Before a servicer assesses on a borrower any premium charge or fee related to force-placed insurance, the servicer ***must***: (i) Deliver to a borrower or place in the mail a written notice containing the information required by paragraph (c)(2) of this section at least 45 days before a servicer assesses on a borrower such charge or fee;
>> (ii) Deliver to the borrower or place in the mail a written notice in accordance with paragraph (d)(1) of this section; and
>> (iii) By the end of the 15-day period beginning on the date the written notice described in paragraph (c)(1)(ii) of this section was delivered to the borrower or placed in the mail, not have received, from the borrower or otherwise, evidence demonstrating that the borrower has had in place, continuously, hazard insurance coverage that complies with the loan contract's requirements to maintain hazard insurance.
>
> (2) Content of notice. The notice required by paragraph (c)(1)(i) of this section shall set forth the following information:(i) The date of the notice;

>  (ii) The servicer's name and mailing address;
>  (iii) The borrower's name and mailing address;
>  (iv) A statement that requests the borrower to provide hazard insurance information for the borrower's property and identifies the property by its physical address;
>  (v) A statement that the borrower's hazard insurance is expiring or has expired, as applicable, and that the servicer does not have evidence that the borrower has hazard insurance coverage past the expiration date, and that, if applicable, identifies the type of hazard insurance for which the servicer lacks evidence of coverage;
>  (vi) A statement that hazard insurance is required on the borrower's property, and that the servicer has purchased or will purchase, as applicable, such insurance at the borrower's expense;
>  (vii) A statement requesting the borrower to promptly provide the servicer with insurance information;
>  (viii) A description of the requested insurance information and how the borrower may provide such information, and if applicable, a statement that the requested information must be in writing;
>  (ix) A statement that insurance the servicer has purchased or purchases:
>    (A) May cost significantly more than hazard insurance purchased by the borrower;
>    (B) Not provide as much coverage as hazard insurance purchased by the borrower;
>  (x) The servicer's telephone number for borrower inquiries; and
>  (xi) If applicable, a statement advising the borrower to review additional information provided in the same transmittal.

(Emphasis added).

Exhibits D, E, I, and V to the Motion are all notices pertaining to force placed insurance:

- Exhibit D states: "Please remit current evidence of acceptable hazard insurance for the property listed above."

- Exhibit E reiterates the request for insurance, "we have not received a copy of valid hazard insurance."

- Exhibit I advises that lender-places insurance remains in effect.

- Exhibit V advised that "proof of acceptable insurance coverage has not been provided."

Ocwen was obligated to send these notices pursuant to 12 CFR §1024.37(c). Similar letters have been found to not be efforts to collect a debt but simply comply with 12 CFR

§1024.37(c). Preuher v. Seterus, LLC, 2014 U.S.Dist. LEXIS 171139, *7 (N.D.Ill. 2014) (considering whether letters sent pursuant to 12 CFR §1024.37(c) violated FDCPA). Thus, the correspondence should not form a basis for any sort of sanction or contempt finding.

**2.    12 U.S.C. §2605 AND §2609 OBLIGATE OCWEN TO SEND INFORMATION TO DEBTORS ABOUT THEIR ESCROW ACCOUNT BALANCE.**

12 U.S.C. 2609(b) states:

Notification of shortage in escrow account. If the terms of any federally related mortgage loan require the borrower to make payments to the servicer (as the term is defined in section 6(i) [12 USCS § 2605(i)]) of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall notify the borrower not less than annually of any shortage of funds in the escrow account.

Exhibits F. O, and W to the Debtors' Motion contained information pertaining to the Debtors' escrow account, required pursuant to 12 U.S.C. 2605 and 2609:

- Exhibit F is titled "Escrow Analysis Statement" and, in the upper left hand corner, states "[i]n accordance with RESPA requirements, this notice is being sent as a result of the review on your escrow account."[1] Exhibit F clearly states there is a shortage of escrow funds.
- Exhibit O indicates that Ocwen advanced $15,172.88 for an escrow shortage.
- Exhibit W states that Debtors had an escrow deficiency of $17,136.88 and also contained a bankruptcy disclaimer.

Failure to provide this information to the borrower exposes the servicer to liability for statutory penalties. 12 U.S.C. §2609(d). Consequently, these documents do not violate the discharge injunction.

///

///

---

[1]    12 U.S.C. 2605-2609 are part of the Real Estate Settlement Procedures Act ("RESPA").

### 3. 15 U.S.C. § 1692g IMPOSES A DUTY UPON A DEBT COLLECTOR TO SEND DEBT VALIDATION INFORMATION TO THE DEBTORS.

Exhibit U to their Motion, correspondence dated December 9, 2014, and titled "Debt Validation Notice," does not violate the discharge injunction. First, the correspondence was not sent by Ocwen, but by Western Progressive, the foreclosure sale trustee. Second, the Fair Debt Collection Practices Act requires a debt collector to provide a debtor with written validation of a debt collected, stating the amount of the debt, the name of the creditor, and the debtor's right to and means of disputing the debt. 15 U.S.C. § 1692g(a). Exhibit U provides all this information, including the name of the creditor, the amount due as of November 18, 2014, and the Debtors' ability to dispute the debt. Thus, the Notice was sent pursuant to 15 U.S.C. § 1692g(a) and thus did not violate the discharge injunction.

### 4. CALIFORNIA LAW REQUIRES THAT OCWEN COMMUNICATE CERTAIN INFORMATION TO THE DEBTORS.

California law places particular emphasis on communicating with the Debtors in the course of non-judicial foreclosure. Cal. Civ. Code 2923.4 states, in pertinent part:

(a) The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Nothing in the act that added this section, however, shall be interpreted to require a particular result of that process.

Prior to exercising a power of sale, a beneficiary of a first deed of trust must send a notice of default to a borrower pursuant to Cal. Civ. Code 2924(1)(a), which states:

The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of default shall include all of the following:

(A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.

(B) A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.

(C) A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

- Exhibit R to Debtors' Motion, is in fact titled "Notice of Default and Election to Sell Under Deed of Trust" required by Cal. Civil Code § 2924(1)(A).

Cal. Civ. Code 2923.5(a)(2) provides in part that, "a mortgage servicer shall contact the borrower in person or by telephone" prior to recording a notice of default. If the servicer is unable to contact the borrower, then the servicer must proceed to comply with several other requirements prescribed by Cal. Civ. Code 2923, one of which includes sending the homeowner written correspondence with contact information for HUD. Cal. Civ. Code 2923.5(e)(2).

- Exhibit P To Debtors' Motion is the written correspondence Ocwen sent to comply with Cal. Civ. Code 2923.5, and states "[w]e are contacting you against as required by California law" and further contains HUD's toll-free number. Exhibit P was thus sent to comply with Cal. Civ. Code 2923.5(e)(2) and is also not a basis for any sanction.

After the notice of default is recorded, a servicer must continue to correspond with a homeowner to comply with California law. Cal. Civ. Code 2924.9 states:

(a) Unless a borrower has previously exhausted the first lien loan modification process offered by, or through, his or her mortgage servicer described in Section 2923.6, within five business days after recording a notice of default pursuant to Section 2924, a mortgage servicer that offers one or more foreclosure prevention alternatives shall send a written communication to the borrower that includes all of the following information:

(1) That the borrower may be evaluated for a foreclosure prevention alternative or, if applicable, foreclosure prevention alternatives.

(2) Whether an application is required to be submitted by the borrower in order to be considered for a foreclosure prevention alternative.

7

(3) The means and process by which a borrower may obtain an application for a foreclosure prevention alternative.

- Debtors' Exhibits H, L, M and S are correspondence sent from Ocwen to the Debtors advising the Debtors of foreclosure prevention alternatives. <u>See</u> Exhibit S to Debtors' Motion. Notably, even though the correspondence advising of foreclosure prevention alternatives was sent to comply with California law, it contained a bankruptcy disclaimer that specifically advised the Debtors' that "this letter is in no way an attempt to collect either a pre-petition, post petition or discharged debt." <u>Id</u>.

Remarkably, Debtors seek to use Ocwen's efforts to comply with California law as grounds for sanctioning Ocwen. On the other hand, if Ocwen failed to comply with California foreclosure law, it would be liable for, at a minimum, $50,000.00 under certain circumstances. Cal. Civ. Code 2924.12. Thus, none of these communications can be construed to violate the discharge injunction, and the Court should not impose any sort of sanction against Ocwen for sending the correspondence discussed.

### B.    IF THIS COURT SHOULD AWARD SANCTIONS, MINIMAL SANCTIONS ARE WARRANTED

At the evidentiary hearing, Debtors, who initially requested $30,000.00, asked this Court to award $500,000.00 in damages, $100,000.00 for each debtor as well as the balance of Ocwen's unpaid loan. The Ninth Circuit has made it clear, however, that bankruptcy courts may not impose "serious punitive penalties," whether pursuant to its inherent authority or under section 105(a) of the Bankruptcy Code. <u>Knupger v. Lindblade (In re Dyer)</u>, 322 F.3d 1178, 1193 (9th Cir. 2002); <u>Rosales v. Wallace (In re Wallace)</u>, No. NV-11-1681-KiPaD, 2012 Bankr. LEXIS 2934 (BAP 9th Cir. 2012). To be clear, the Ninth Circuit "has never authorized punitive (i.e. criminal) sanctions under the contempt authority of § 105(a)," and it has "conclude[d] that criminal contempt sanctions are not available under § 105(a)." <u>Dyer</u>, 322 F.3d at 1193.

The purpose behind this is explained by the Ninth Circuit in the <u>Dyer</u> decision:

Our interpretation of the language of § 105(a) is rein-forced by the fundamental

8

> due process considerations we discussed in Hanshaw. That case held that due process requires that an individual accused of criminal contempt receive several procedural protections, including a jury trial, before "serious criminal penalties" can be imposed. 244 F.3d at 1138 (citing Bagwell, 512 U.S. at 833).
>
> The bankruptcy court is ill-equipped to provide those procedural protections. For example, the bankruptcy court is unable to preside over a jury trial absent explicit consent from the parties and the district court. 28 U.S.C. § 157(e). Further, allowing a non Article III court to adjudicate criminal contempt raises fundamental constitutional questions. These considerations confirm our reading of § 105(a).

322 F.3d at 1193-94.

The Ninth Circuit went on to explain that the amount of the sanction need to be large to be criminal, "a flat unconditional fine totaling even as little as $50 could be criminal if the contemptor has no subsequent opportunity to reduce or avoid the fine through compliance." Id. at 1192. While this Court does have authority to order "relatively mild" non-compensatory fines, the Ninth Circuit has even suggested an award of $5,000.00 may be too much. Zambano v. Tustin, 885 F.2d 1473, 1479 (9th Cir. 1989); F.J. Hanshaw Enters v. Emeral River Dev., Inc., 244 F.3d 1128, 1140 n.10 (9th Cir. 2001); Dyer at 1193.

### C.     DEBTORS FAILED TO PROVE ANY COMPENSABLE HARM.

Even if this Court finds Ocwen liable, Debtors are only entitled to compensatory damage. Dyer, F.3d 1189-1194. At the evidentiary hearing on this matter, Debtors failed to provide any proof whatsoever of any sort of compensatory damage, which is defined by the Ninth Circuit as "limited to 'actual losses sustained as a result of the" sanctionable conduct. General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986) (citing to Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir. 1983). Debtors failed to provide any testimony or documentation to support a claim for actual damages.

### D.     DEBTORS CANNOT RECOVER EMOTIONAL DISTRESS DAMAGES.

Debtors' sole contention is that they suffered some sort of emotional distress through Ocwen's alleged actions. However, "a debtor cannot recover damages for emotional distress from a violation of the discharge injunction." In re Urwin, 2010 WL 148645, *8 (Bankr. D. Idaho, 2010). Even if this Court were persuaded to permit the recovery of damages for

emotional distress, Debtors provided no corroborating medical proof of such.  <u>In re Stinson</u>, 295 B.R. 109, 120 n.8 (B.A.P. 9th Cir. 2003) ("The majority of courts have denied damages for emotional distress where there is no medical or other hard evidence to show something more than a fleeting or inconsequential injury."); <u>In re Diviney</u>, 211 B.R. 951, 967 (Bankr. N.D. Okla. 1997) (holding that, where emotional distress seemed trivial and no medical evidence corroborated the claim, damages for emotional distress were not warranted.)  The Ninth Circuit has suggested that, at least in the case of violations of the automatic stay, corroborative proof of emotional damages may not be need when there is "egregious" conduct.  <u>In re Dawson</u>, 390 F.3d 1139, 1149-1150 (9th Cir. 2004).  However, no such egregious conduct exists in this matter and thus Debtors were required to prove emotional distress damages through corroborative medical testimony.  Moreover, Debtors' testimony demonstrated that the stress they suffered and ensuing strain on their marital relationship was not caused by Ocwen's post-discharge actions, but rather, preceded Debtor's bankruptcy by almost two years and was a direct result of Debtors' inability to maintain their payments on their home.  Accordingly, no emotional distress damages have been established in this case, nonetheless warranted under applicable law.

### E. DEBTORS ARE NOT ENTITLED TO RECOVER ATTORNEY FEES.

As Ocwen did not violate the discharge order, there is no basis for an award of attorney fees.  However, even if this Court believes Ocwen did violate the discharge order, fees cannot be awarded when the attorney's services do not relate to the violation of the discharge injunction.  <u>In re Segal</u>, 2015 Bankr. LEXIS 286, *28-89 (B.A.P. 9th Cir. 2015).  Thus, if attorney's services are, as here, aimed at "presenting emotional distress evidence," and the Court finds that the emotional distress was not caused by the violation of the discharge order, fees cannot be awarded.  <u>Id</u>.  Even if fees are awarded, those fees must be reasonable and the party seeking those fees bears the burden of proving reasonableness.  <u>Id</u>. at *25-26.  Indeed, by Debtors' own admission, they have not paid their attorney any money whatsoever.

/././

/././

/././

### III. CONCLUSION

For the aforementioned reasons, Ocwen respectfully requests that this Court enter an order denying the Motion for Sanctions.

Dated: April 11, 2016                    WRIGHT, FINLAY & ZAK, LLP

/s/ *Christopher A.J. Swift, Esq.*
Edgar C. Smith, Esq.
Nevada Bar No. 5506
Christopher Alan James Swift, Esq.
Nevada Bar No. 11291
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
(702) 666-0632; Fax: (702) 946-1345
cswift@wrightlegal.net
*Attorneys for Ocwen Loan Servicing, LLC*

# CERTIFICATE OF SERVICE

1. On April 11, 2016, I served the following document(s):

2. **SUPPLEMENTAL OPPOSITION TO MOTION TO REOPEN CHAPTER 7 UNDER 11 USC § 350 AND FRBP Rule 5010 TO HOLD CREDITORS IN CONTEMPT AND FOR SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION [11 USC § 524(a)(2)]**

3. I served the above-named document(s) by the following means to the persons as listed below:

   (Check all that apply)

   ■ a. ECF System (You must attach the "Notice of Electronic Filing", or list all persons and address and attach additional paper if necessary)

   SETH J. ADAMS on behalf of Creditor DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR GMACM MORTGAGE LOAN TRUST
   sadams@woodburnandwedge.com, NVBK@mccarthyholthus.com

   CHRISTOPHER PATRICK BURKE on behalf of Debtor CHRISTOPHER MICHAEL MARINO
   attycburke@charter.net

   CHRISTOPHER PATRICK BURKE on behalf of Joint Debtor VALERIE MARGARET MARINO
   attycburke@charter.net

   W. DONALD GIESEKE
   wdg@renotrustee.com, dgieseke@ecf.epiqsystems.com

   U.S. TRUSTEE - RN - 7
   USTPRegion17.RE.ECF@usdoj.gov

   ■ b. United States mail, postage fully pre-paid (List persons and addresses. Attach additional paper if necessary)

   CHRISTOPHER MICHAEL MARINO
   POB 565
   VERDI, NV 89439

   VALERIE MARGARET MARINO
   POB 565
   VERDI, NV 89439

☐ c.  **Personal Service** (List persons and addresses. Attach additional paper if necessary)

I personally delivered the document(s) to the persons at these addresses:

_____

☐     For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐     For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d.  **By direct email** (as opposed to through the ECF System) (List persons and email addresses. Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e.  **By fax transmission** (List persons and fax numbers. Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ f.  **By messenger** (List persons and addresses. Attached additional paper if necessary)

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service. (A declaration by the messenger must be attached to the Certificate of Service).

I declare under penalty of perjury that the foregoing is true and correct.

Signed on Monday, April 11, 2016.

                                                */s/   Faith Harris*_____
                                                An employee of Wright, Finlay & Zak, LLP