# EXHIBIT "B"

```
                  UNITED STATES BANKRUPTCY COURT
                     DISTRICT OF NEVADA (RENO)


                                .    Case No.  13-50461-BTB
IN RE:                          .
                                .    Chapter 7
CHRISTOPHER MICHAEL MARINO      .
and VALERIE MARGARET MARINO,    .    300 Booth Street
                                .    Reno, NV  89509
             Debtors.           .
                                .    Monday, June 20, 2016
. . . . . . . . . . . . . . . . .    3:04 p.m.


   TRANSCRIPT OF JUDGES RULING RE:  DOC# 27 MOTION TO REOPEN
  CHAPTER 7 CASE UNDER 11 U.S.C. 350 AND F.R.B.P. 5010 TO HOLD
   CREDITORS IN CONTEMPT AND FOR SANCTIONS FOR VIOLATION OF THE
    DISCHARGE INJUNCTION 11 U.S.C. 524(a)(2). FEE AMOUNT 260.,
 MOTION FOR CONTEMPT, MOTION FOR SANCTIONS FOR VIOLATION OF THE
    DISCHARGE INJUNCTION FILED BY CHRISTOPHER PATRICK BURKE ON
  BEHALF OF CHRISTOPHER MICHAEL MARINO, VALERIE MARGARET MARINO
             BEFORE THE HONORABLE BRUCE T. BEESLEY
             UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

For the Debtors:           CHRISTOPHER PATRICK BURKE, ESQ.
                           702 Plumas Street
                           Reno, NV 89509
                           (775) 333-9277

For Ocwen Loan
Servicing, LLC:            Wright, Finlay & Zak
                           By:  SEAN N. PAYNE, ESQ.
                           7785 West Sahara Avenue
                           Suite 200
                           Las Vegas, NV 89117
                           (702) 475-7964




Audio Operator:            Stacie C. Burney, ECR

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

2

1   (Proceedings commence at 3:04 p.m.)
2   THE COURT:  Christopher and Valerie Marino, Case
3   Number 13-50461.
4   Appearances, please.
5   MR. BURKE:  (Telephonically)  Christopher Burke for
6   the Marinos.
7   MR. PAYNE:  (Telephonically)  Good afternoon, Your
8   Honor.  Sean Payne for the creditor.
9   THE COURT:  Thank you.  I apologize this took me so
10  long to get to this, but this was the best briefing I've seen
11  on one of these hearings, and the best representations,
12  actually, so it took a little more time than particularly
13  unopposed ones.  But that's my excuse for taking so long to do
14  this.
15  But let me tell you what I've looked through.  I've
16  gone -- in the process of preparing for this and I went back
17  and read through all of the pleadings, initially, and all the
18  oppositions and including the supplemental pleadings that were
19  filed after the hearing.  I've looked through all of the
20  exhibits which were admitted in the court.  I've gone through
21  the transcript of the proceedings.
22  I've also looked at each of the cited references for
23  the -- that the defendant used to support the filing of certain
24  -- sending of certain letters.  So those include 12 C.F.R.
25  Section 1024.37(c), California Civil Code 2924.9, 12 U.S.C.

1  2605 and 2609, 12 U.S.C. 2605, California Civil Code 2923.5,
2  15 U.S.C. 1692(g), California Civil Code 2924 and I think
3  that's -- that is all of them.
4          In this case what happened, the debtor filed in
5  approximately March of 2013, and was -- I'm sorry, I think --
6  yeah, approximately March of 2013; I think it was discharged in
7  June of 2013.  And after that began Ocwen began sending notices
8  and calling the debtor.  And over the course of time sent the
9  following:
10         A notice of interest rate change.
11         A mortgage account statement stating, on Exhibit C,
12 that Ocwen is aware that they had filed bankruptcy.  That was
13 also evident in looking at the proof of service, both with
14 respect to the bankruptcy filing, which was served upon Ocwen,
15 and the notice of discharge, which was served upon Ocwen.
16         Exhibit D, request evidence on insurance.  And on
17 that one, there wasn't any disclaimer.
18         Exhibit E, notice of lender purchased insurance.
19         Exhibit F, an escrow analysis.
20         Exhibit G, a notice that the loan was paid in full,
21 which I'm assuming was an error.
22         Exhibit H, a mortgage assistance resource letter,
23 with a bankruptcy disclaimer.
24         Exhibit I, lender-placed insurance was cancelled by
25 mistake, because the loan had not been paid in full.  Lender --

1  I'm sorry, request for response regarding occupancy of the
2  property.
3           Exhibit K, privacy changes for consumers.
4           Exhibit L indicating that Ocwen received a discharge,
5  but the debtor still was occupying the home, instructions to
6  start request for mortgage assistance.
7           Exhibit M, letter indicating foreclosure action had
8  been initiated.
9           Exhibit N, past due notice of contract, in which case
10 it's very important you pay the current amount due.
11          Exhibit O, escrow payment added to the monthly
12 payment.
13          Exhibit P, notice of -- important notice indicating
14 Ocwen was going to foreclose on 11/22/14 if no contract was
15 entered into.
16          Exhibit Q, a final notice seeking evidence of
17 insurance.
18          Exhibit R, notice of default on election to sell.
19 Exhibit S, mortgage assistance resources.
20          Exhibit T, this is something that had nothing to do
21 with this particular case.
22          Exhibit U, debtor's validation notice from West
23 Progressive, LLC with full payoff amount.
24          Exhibit V, lender's purchased insurance letter.
25          And Exhibit W.

Case 13-50461-btb    Doc 157-2    Entered 09/15/20 15:40:46    Page 6 of 13
Case 19-50461-btb    Doc 59    Entered 07/05/16 07:47:41    Page 5 of 12

5

1    I compared the various notices -- who have we lost?
2 Who have we kept?
3            MR. BURKE: Christopher Burke's still here.
4            THE COURT: Mr. Payne? So let's get Mr. Payne back.
5            THE CLERK: Yes, sir.
6       (Off record from 3:09 p.m. to 3:09 p.m.)
7            THE CLERK: Yeah, we're not quite sure what happened.
8 Just one moment.
9            THE COURT: That's okay.
10           THE CLERK: Okay. Mr. Burke's on line one.
11           THE COURT: Mr. Payne?
12           THE CLERK: Just one moment, Your Honor.
13           THE COURT: I'm sorry.
14           THE CLERK: I have to verify which line to put him on
15 so I don't hang anybody up.
16           You should have him, Your Honor.
17           THE COURT: Mr. Payne?
18           MR. PAYNE: I'm here, Your Honor.
19           THE COURT: Sorry, we lost you somehow. We'll try
20 not to do it again.
21           MR. PAYNE: No problem.
22           THE COURT: I had finished -- had you -- were you
23 still on the line when I'd finished reading -- identifying the
24 exhibits?
25           MR. PAYNE: I believe so, Your Honor.

Case 13-50461-btb    Doc 157-2    Entered 09/15/20 15:40:46    Page 7 of 13
Case 13-50461-btb    Doc 59    Entered 09/05/16 07:47:41    Page 6 of 12

6

1       THE COURT: Okay. In addition to looking at the
2  exhibits and looking at the statutes under which certain of the
3  exhibits were sent, I had one of my law clerks go through and
4  mark on those the portions of the letter that was not included
5  in the directions, the statutory directions to send various
6  notices.
7       And one of the main -- the -- probably the main
8  defense that Ocwen is asserting is that it's required to send
9  those various notices. I actually don't think -- I think if
10 all they sent was what was required by the notice, they would
11 be fine. But in each of those cases, they included additional
12 language, which indicated that they were trying to collect
13 money from the debtor. In some cases they described themselves
14 as debt collectors, other cases they talked about ways in which
15 the debtor could get into a new restructured mortgage, they did
16 various things. Ocwen's witness testified that they would
17 continue sending those mortgage -- those various kinds of
18 notices until they were asked to stop by the debtor.
19      The debtor's testimony, which was un-rebutted, was
20 that in response to the approximately 100 telephone calls they
21 got, that they had requested that Ocwen stop, numerous times,
22 and that they had done so.
23      I took a look at the case of In re Nordlund, which is
24 494 B.R. 507, it's from the Eastern District of California.
25 It's authored by a judge named McManus, who's a -- was a long-

1  time practitioner in California and also a judge.  And what he
2  found was that while the notices, if each one were taken
3  individually, probably are innocuous, but when you have a
4  series of notices over a long period of time, particularly
5  where you have the debtor having received a discharge and at
6  some point the debtor having vacated the house, that there --
7  they cannot really be trying to notify the debtors of certain
8  things, because the debtor's given up the house.  They
9  indicated they would abandon the house, they left the house.
10         Ocwen could not have been doing anything but trying
11 to get the debtor to give them some more money, either for
12 insurance or agree to be responsible for the house that was
13 vacant, even after they had -- even after Ocwen had -- received
14 stay relief.  I think that Ocwen, rather than foreclose on the
15 property, which they could have done approximately six -- well,
16 approximately three months after the case was filed, waited two
17 years to foreclose, hoping that if they sent enough letters and
18 gave enough calls, that the debtor would ultimately pay them
19 some money for something.  That's all I can think.
20         They talk about, you know, "if you have filed
21 bankruptcy."  Well, they knew the debtor had filed bankruptcy
22 because they got the notice of the bankruptcy filing.  They
23 talk about "if you have received a discharge."  Well, they knew
24 that the debtor had received a discharge.  I don't think Ocwen,
25 or any creditor, is allowed, when they knew that the debtor has

Case 13-50461-btb    Doc 157-2    Entered 09/15/20 15:40:46    Page 9 of 13
Case 13-50461-btb    Doc 59    Entered 07/05/16 07:47:41    Page 8 of 12

8

```
 1  filed bankruptcy, and when they know that the debtor has
 2  received a discharge, and they knew the debtor has said they're
 3  going to surrender the house, has the right to have their
 4  computer gen out these various letters, which do comply, at
 5  least in some of the provisions, with the various notification
 6  statutes, but all of which include language which is not
 7  included in those statutes, which, to varying degrees of
 8  urgency, want the debtor to undertake a new obligation or pay
 9  them money.
10            Also, the debtor testified that they had received
11  approximately a hundred calls, three -- often as many as three
12  a day, over the period of year, following their discharge. And
13  in each of those cases Ocwen identified as wanting -- trying to
14  collect a debt, trying to get the debtor to pay, and did not
15  set forth any bankruptcy disclaimer. No evidence was produced
16  by Ocwen to rebut that; Ocwen didn't have any records of the
17  phone calls, didn't have a script that Ocwen's individuals were
18  supposed to use, that went completely un-rebutted.
19            Because of that, I find, by clear and convincing
20  evidence, that Ocwen has violated the discharge injunction.
21            The issue of damages, I -- as I understand the law of
22  the Ninth Circuit, I do not have authority to impose punitive
23  damages. If I did, I probably would, but I don't. I will
24  award attorney's fees -- well, I will direct Mr. -- oh god, I
25  will --
```

9

1        MR. BURKE: Burke.

2        THE COURT: -- Mr. Burke to get -- oh, that's awful.
3   I will direct Mr. Burke to file an application for attorneys'
4   fees, which you certainly can respond to, and I'm awarding
5   damages of 1,000 -- well, emotional distress are the main
6   damages. The debtor also had some damages in using gas and
7   spending time related to getting to Mr. Burke's office, those
8   damages are allowed.

9        The debtor testified, again un-rebutted, concerning
10  emotional distress they had as a result of the calls and the
11  letters they were giving. They testified that it was causing
12  them emotional distress, that their marriage was threatened.
13  They had corroborating testimony from a friend and a neighbor
14  who testified to the same things, to the distress and the
15  problems with the marriage that the debtor was undergoing.
16  That also went un-rebutted by Ocwen. I'm awarding $1,000 per
17  letter and $1,000 per phone call as emotional distress damages,
18  together with whatever attorneys' fees I will allow.

19        Mr. Burke, you would please prepare an order
20  consistent with your post-judgment briefing and this order.

21        We'll be in recess.

22        MR. BURKE: Thank you.

23        THE CLERK: All rise.

24        (Recess taken at 3:16 p.m.)

25        (Proceedings resume at 3:23 p.m.)

10

```
 1              THE CLERK:  All rise.
 2              THE COURT:  Everyone please have a seat again.
 3              Mr. Payne, I understand you had a question and you
 4   had the phone on mute.  We're having phone trouble with you
 5   today, I'm sorry.
 6              MR. PAYNE:  Yes.  My apologies, Your Honor, for
 7   making you come back on the bench.
 8              I just wanted to ask for some clarification with
 9   respect to the damages.
10              THE COURT:  Yes.
11              MR. PAYNE:  It was my understanding that you did not
12   award punitive, you awarded attorneys' fees to be submitted by
13   Mr. Burke and --
14              THE COURT:  I'm award --
15              MR. PAYNE:  -- we would have the opportunity to
16   respond to his attorneys' fees.  And then for emotional
17   distress, I believe I heard $1,000 for the letters and $1,000
18   for the phone calls, but I'm --
19              THE COURT:  No.
20              MR. PAYNE:  -- and then for compensatory for gas and
21   time, I'm not sure if I heard an actual figure.
22              THE COURT:  But it was $1,000 per phone call and
23   $1,000 per letter, plus out-of-pocket expenses.
24              MR. PAYNE:  And in your findings, Your Honor, how
25   many letters did you specifically find, and how many phone
```

1  calls are you specifically finding in your findings of fact?
2         THE COURT: A hundred phone calls and -- I'm finding
3  18 letters. One was -- one of the letters wasn't from this
4  case, one of the letters was an inaccurate letter saying the
5  house has been paid off, and another one was a letter saying --
6  actually, 19 letters. Because the letter saying --
7         MR. PAYNE: Nineteen letters and 100 phone calls?
8         THE COURT: Yeah. The one that said -- Exhibit G,
9  the one that said the loan was paid in full, I don't think was
10 -- I think it was just an error.
11        MR. PAYNE: Okay. Thank you, Your Honor.
12        THE COURT: Thank you.
13        MR. BURKE: Thank you.
14        THE COURT: We'll be in recess.
15    (Proceedings concluded at 3:25 p.m.)
16                      * * * * *

12

1 **C E R T I F I C A T I O N**

2

3     I, Lisa Luciano, court-approved transcriber, hereby
4 certify that the foregoing is a correct transcript from the
5 official electronic sound recording of the proceedings in the
6 above-entitled matter.

7

8

9 _[signature: Lisa Luciano]_

10 LISA LUCIANO, AAERT NO. 327     DATE:  June 30, 2016
11 ACCESS TRANSCRIPTS, LLC

12
13
14
15
16
17
18
19
20
21
22
23
24
25

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)