WRIGHT, FINLAY & ZAK, LLP
Arnold L. Graff, Esq.
Nevada Bar No. 13343
Ramir M. Hernandez, Esq.
Nevada Bar No. 13146
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
(702) 475-7964; Fax: (702) 946-1345
rhernandez@wrightlegal.net
*Attorneys for PHH Mortgage Services, formerly known as Ocwen Loan Servicing, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE: | Case No.: 13-50461-BTB |
| CHRISTOPHER MICHAEL MARINO, and VALERIE MARGARET MARINO, | Chapter 7 |
| Debtors | **RESPONSE TO MOTION TO DETERMINE PUNITIVE DAMAGES** |
| | **Hearing Date:  10/14/2020**<br>**Hearing Time:  2:00 p.m.** |

PHH Mortgage Services, formerly known as Ocwen Loan Servicing, LLC ("PHH"), by and through its counsel of record, Wright, Finlay & Zak, LLP, hereby files this Response to Debtor's Motion for Punitive Damages [ECF No. 157].

## I.  INTRODUCTION

Both the BAP and the Ninth Circuit referred this matter back to the bankruptcy court on the question of determining whether to impose punitive damages and, if so, in what amount. However, those orders do not require that this court refer this matter back up to the district court so as to allow Debtor the opportunity to press for a higher punitive damages award, nor does either court's determination to remand the matter to this Court support Debtor's assertion that this Court can assign punitive damages without a new evidentiary hearing on whether such

damages are appropriate and to what amount.  To the contrary, one of the bases upon which the Ninth Circuit found PHH's appeal to be premature was that "In short, the BAP remanded to the bankruptcy court for more factual findings on punitive damages.  The bankruptcy court's decision whether punitive damages are appropriate is not a 'ministerial task[.]'"[1]    Denying an evidentiary hearing before imposing punitive damages would be a denial of Due Process.

Moreover, PHH will be filing a Rule 60 Motion for Relief from Judgment ("Relief Motion") based on the change of standard for bankruptcy violations set forth in *Taggart v. Lorenzen*.  PHH will have filed and requested a hearing date for the Relief Motion prior to the hearing on this matter and respectfully requests this court not make a decision on the Motion for Punitive Damages until it can be heard on its Relief Motion. .

## II. STATEMENT OF FACTS

1.    Debtors purchased the real property commonly known as 780 Beaver Creek Circle, Verdi, California ("Property"), borrowing $325,000.00 ("Loan"), the repayment of which amount was secured by a first Deed of Trust recorded against the Property.

2.    PHH, then known as Ocwen, was the loan servicer on the Loan.

3.    Debtors filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Nevada on March 15, 2013,[2] and received a discharge in that bankruptcy on June 18, 2013.[3]

4.    The Debtors indicated in their bankruptcy schedules in their petition that they would surrender the Property.[4]

5.    On November 19, 2015, Debtors filed a Motion to reopen their Chapter 7 proceeding and to hold Ocwen in contempt and for sanctions for violation of the discharge injunction, punitive damages, and attorney's fees and costs.  The basis for the Motion was correspondence and telephone calls Ocwen allegedly sent to Debtors in violation of the discharge

---

[1] *In re Marino*, (9th Cir. 2020) 949 F.3d 483, 488 (citation *omitted*).
[2] ECF No. 1
[3] ECF No. 20.
[4] ECF No. 1 at 45-46.

2

1  injunction.[5]

2      6.    After an evidentiary hearing, the bankruptcy court on July 5, 2016, entered an

3  order that Ocwen had violated the discharge injunction by sending post-discharge 19 letters and

4  making 100 telephone calls to Debtors, and awarded the Appellants $119,000.00 (hereinafter

5  "Contempt Order").[6] However, the bankruptcy court denied Debtors' request for punitive

6  damages.[7]

7      7.    The bankruptcy court subsequently entered an order awarding attorney's fees and

8  costs in the amount of $34,955.90 on November 4, 2016.[8]

9      8.    Ocwen timely appealed the Contempt Order to the 9th Circuit BAP (the "Ocwen

10 First Appeal") on July 19, 2016.[9]

11     9.    Appellants filed a cross-appeal, arguing that the bankruptcy court erred in noting

12 it could not award any punitive damages (the "Cross-Appeal")[10]

13     10.   After briefing, the Ocwen First Appeal and Cross-Appeal were argued on

14 December 1, 2017, and the BAP filed its Opinion on December 22, 2017, affirming the

15 bankruptcy court's findings against Ocwen but reversed and remanded the bankruptcy court's

16 finding that it could not award *mild* punitive damages against Ocwen ("BAP Order").[11]

17     11.   Ocwen filed an appeal of the BAP Order with the Ninth Circuit on January 19,

18 2018 (the "Ocwen Second Appeal").[12]

19     12.   In the meantime, Debtors filed a Motion seeking to recover fees of $16,950.00

20 with the BAP.  The BAP denied that Motion on July 3, 2018, expressly finding that the Ocwen

21 First Appeal was not frivolous, that California Civil Code § 1717 was inapplicable as the

22 underlying action was not on a contract, and that Ninth Circuit case law was clear that 11 USC §

---

[5] ECF No. 27.
[6] ECF No. 60.
[7] *Id.*
[8] ECF No. 126.
[9] ECF No. 68.
[10] ECF No. 83.
[11] *Cf.* ECF No. 44 in BAP App., Case 16-1229.
[12] ECF No. 54.1 in BAP App., Case 16-1229

105(a) did not allow for a discretionary fee award in a bankruptcy appeal.[13]

13.　Debtors filed an appeal to the Ninth Circuit on the issue of attorney's fees and costs (the "Debtors Appeal").  The Ninth Circuit consolidated the Ocwen Second Appeal and the Debtors Appeal on August 22, 2018.[14]

14.　After briefing and oral argument, the Ninth Circuit issued a published opinion, *In re Marino*, (2020) 949 F.3d 483, wherein it dismissed the Second Ocwen Appeal for lack of jurisdiction because the BAP's decision remanding the Ocwen First Appeal for a decision on punitive damages was not a final, appealable order, including because the bankruptcy court needed to make further findings of fact concerning the punitive damages sought by Debtor.[15] The Circuit Court also denied the Debtors Appeal, affirming the BAP's decision denying Debtors their attorney's fees on appeal ("Ninth Circuit Order").[16]  Debtors Motion for *en banc* rehearing of that denial was also denied[17] but, on September 24, 2020, Debtors filed a petition for certiorari to the U.S. Supreme Court on that issue.

15.　On September 8, 2020, the bankruptcy court reopened the bankruptcy case.[18]

16.　On September 15, 20202, Debtor file a Motion to Determine Punitive Damages with a hearing date set for October 14, 2020.[19]

### III. LEGAL STANDARD

As the BAP pointed out in its Order on this case, "[w]hile the Ninth Circuit has stated that the bankruptcy courts are prohibited from assessing any "serious" punitive damages, it has left open the possibility of "relatively mild noncompensatory fines."[20]  The BAP then remanded this case as to whether the Court may award punitive damages.[21]  In its Order, the BAP alluded

---

[13] *Cf.* ECF No. 61 in BAP App., Case 16-1229.
[14] ECF No. 5 in 9th Cir. App., Case No. 18-60040.
[15] *Id.* at 488.
[16] ECF No. 34 in 9th Cir. App., Case No. 18-60040.
[17] ECF No. 42 in 9th Cir. App., Case No. 18-60040
[18] ECF No. 155.
[19] ECF No. 157.
[20] 577 B.R. 772, 788 (B.A.P. 9th Cir. 2017), *aff'd in part, appeal dismissed in part*, 949 F.3d 483 (9th Cir. 2020)(citing to *In re Dyer*, 322 F.3d 1178, 1193 (9th Cir. 2003).
[21] *Id.* at 789.

4

to the possibility that, in an appropriate case, where the bankruptcy court thought that harsher punitive damages should be considered, the bankruptcy court *had the option* to make a report and recommendation to the district court, subject to that court's *de novo* judicial review, or a referral to the district court for criminal contempt.[22]  Neither the BAP nor the Ninth Circuit made any determination or even suggestion that this was an appropriate case in which to do so.  It is not.

## IV. <u>LEGAL ARGUMENT</u>

The parties agree that the BAP authorized this Court to make a determination of punitive damages.  They disagree on whether it is appropriate for this Court to do so based on the existing record or whether an evidentiary hearing is required. As the BAP noted in its opinion, the alternatives this Court has are:  (1) to decide itself whether to impose "mild" punitive damages if appropriate; (2) whether to do a report and recommendation to the district court if it believes more serious punitive damages are warranted; or (3) to refer the matter to the district court if the contempt rose to the level of criminal contempt.[23]   As a matter of basic Due Process, PHH contends that, prior to imposing punitive damages—which bear a serious social stigma as well as a monetary cost—this Court needs to hold an evidentiary hearing on the appropriateness of any award of punitive damages and the amount thereof.  As held in *In re Sanchez*:

> The Supreme Court has ruled that for punitive awards to satisfy the Fourteenth Amendment's due process clause, a court's constitutional analysis must address reasonableness and adequate guidance concerns. *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 17, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). The Fifth Circuit has interpreted *Haslip* to require a two-step test: "(1) whether the circumstances of the case indicate that the award is reasonable; and (2) whether the procedure used in assessing and reviewing the award imposes a sufficiently definite and meaningful constraint on the discretion of the factfinder." *Eichenseer v. Reserve Life Ins. Co.*, 934 F.2d 1377, 1381 (5th Cir. 1991). Although the court may consider the size of the punitive damages award and its relationship to the compensatory damages award, neither factor is dispositive. *Id.* at 1382.
>
> The Supreme Court characterized the first *Haslip* prong, reasonableness of the amount of the award, as being supported by two factors: (1) the reprehensible nature of the conduct, and (2) a significant societal interest in preventing similar

---

[22] *Id.*
[23] *Id.*

5

conduct. 499 U.S. at 17, 111 S.Ct. 1032. The second *Haslip* prong, an assessment of the procedural safeguards, does not have to be an exhaustive list of the safeguards, *In re Lile*, 161 B.R. 788 (S.D.Tex. 1993), so long as "there is some meaningful procedural assurance that the amount of the award is not an impulsive reaction to the wrongful conduct of the defendant." *Eichenseer*, 934 F.2d at 1385.

The Court does not have sufficient information at present to render judgment on punitive damages. In particular, the Court does not know enough about the Defendant's motive in violating the automatic stay. Did the Defendant willfully violate the automatic stay? Did it act with reckless disregard of whether it was willfully violating the automatic stay? Were its actions taken in bad faith? The Court needs to hear more evidence before deciding this issue.[24]

Indeed, Punitive damages are typically determined via a separate, evidentiary hearing.[25] In light of the time that has passed since the prior evidentiary hearing (over 4 years), the Court should determine punitive damages with a fresh set of eyes in order to make a fair and reasoned determination  whether such damages are warranted under the circumstances and, if so, in what amount.  This Court should note that Ocwen has posted a bond for the full damages amount.[26]

Finally, while Debtors note that the matter may be referred to the district court so that they can have the possibility for an even heavier punitive damages award than this Court could reasonably award, such a direct referral is only appropriate for criminal contempt[27] and Debtors fail to provide any legal reason or cogent argument as to why such a referral would be appropriate here.  The other option noted by the BAP was for this Court to make a report and recommendation to the District Court but, again, that would require that the Court first hold an

---

[24] 372 B.R. 289, 315-16 (Bankr. S.D. Tex. 2007); *See also In re Hendry,* 214 B.R. 473, 476 (Bankr. E.D. Va. 1997)("Because of the special circumstances needed to award punitive damages, the court will hold an additional evidentiary hearing on the appropriateness of a punitive damages award in this case.").

[25] *See also, In re Nickelso*n, 552 B.R. 149, 153 (Bankr. S.D. Miss. 2016)("In the Pretrial Order, the issues of punitive damages and attorneys' fees and expenses were reserved for a separate hearing contingent on the outcome of Phase One of the trial."); *In re Allegheny Int'l, Inc.*, 106 B.R. 75, 81 (Bankr. W.D. Pa. 1989); *Rollins v. Traylor Bros., Inc.*, C14-1414 JCC, 2016 WL 258523, at *17 (W.D. Wash. Jan. 21, 2016).

[26] ECF No. 131.

[27] As the Ninth Circuit stated in *U.S. v. Rylander*:  "Criminal contempt is established when there is a clear and definite order of the court, the contemnor knows of the order, and the contemnor willfully disobeys the order. *Chapman v. Pacific Tel. & Tel. Co.*, 613 F.2d 193, 195 (9th Cir.1979). The penalty is punitive in nature.").  714 F.2d 996, 1001(9th Cir. 1983).

evidentiary hearing to make the appropriate findings.[28]  Any such referral would be under a *de novo* standard of review. Thus, this Court should continue to retain jurisdiction  to decide whether an award of punitive damages is appropriate.

In any event, PHH requests that this Court not make a ruling on the Motion for Punitive Damages until PHH has been heard on its soon-to-be-filed Relief Motion.  In that Relief Motion, PHH will request that the Court vacate its prior judgment and hold a new evidentiary hearing based on the standard set forth in the Supreme Court's ruling in *Taggart v. Lorenzen*.   A ruling on punitive damages would otherwise be premature in light of the Relief Motion, as PHH seeks to vacate the prior judgment in its entirety, as it would become moot if the Relief Motion were granted.

## V. <u>CONCLUSION</u>

PHH respectfully requests that this Court (1) delay any ruling on punitive damages until after it hears PHH's upcoming Motion for Relief from Judgment; (2) hold a separate hearing on punitive damages; and (3) retain any further hearings on the issue of punitive damages rather than refer the matter to the district court.

Dated: September 30, 2020               WRIGHT, FINLAY & ZAK, LLP

/s/ *Ramir M. Hernandez, Esq.*
Arnold L. Graff, Esq.
Nevada Bar No. 13343
Ramir M. Hernandez, Esq.
Nevada Bar No. 13146
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
*Attorneys for PHH Mortgage Services,*
*formerly known as Ocwen Loan Servicing,*
*LLC*

---

[28] 577 B.R. 772 at 789, *supra*.

## CERTIFICATE OF SERVICE

1.    On September 30, 2020, I served the following document(s):

**RESPONSE TO MOTION TO DETERMINE PUNITIVE DAMAGES**

2.    I served the above-named document(s) by the following means to the persons as listed below:

(Check all that apply)

■ a.    ECF System (You must attach the "Notice of Electronic Filing", or list all persons and address and attach additional paper if necessary)

SETH J. ADAMS on behalf of Creditor DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR GMACM MORTGAGE LOAN TRUST
sadams@woodburnandwedge.com, jgoff@woodburnandwedge.com

CHRISTOPHER PATRICK BURKE on behalf of Debtor CHRISTOPHER MICHAEL MARINO
atty@cburke.lvcoxmail.com

CHRISTOPHER PATRICK BURKE on behalf of Debtor CHRISTOPHER MICHAEL MARINO
attycburke@charter.net

CHRISTOPHER PATRICK BURKE on behalf of Joint Debtor VALERIE MARGARET MARINO
atty@cburke.lvcoxmail.com

CHRISTOPHER PATRICK BURKE on behalf of Joint Debtor VALERIE MARGARET MARINO
attycburke@charter.net

W. DONALD GIESEKE
wdg@renotrustee.com, dgieseke@ecf.axosfs.com

DANA JONATHON NITZ on behalf of Creditor OCWEN LOAN SERVICING LLC
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

☐ b.    United States mail, postage fully pre-paid (List persons and addresses. Attach additional paper if necessary)

☐ c.   **Personal Service** (List persons and addresses.  Attach additional paper if necessary)

I personally delivered the document(s) to the persons at these addresses:

_____

☐      For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐      For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d.   **By direct email (as opposed to through the ECF System)** (List persons and email addresses.  Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e.   **By fax transmission** (List persons and fax numbers.  Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.   A copy of the record of the fax transmission is attached.

☐ f.   **By messenger** (List persons and addresses.  Attached additional paper if necessary)

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service. (A declaration by the messenger must be attached to the Certificate of Service).

I declare under penalty of perjury that the foregoing is true and correct.

Signed on this 30th day of September, 2020.

_/s/ Jason Craig_____
An employee of Wright, Finlay & Zak, LLP

9