1  WRIGHT, FINLAY & ZAK, LLP
   Arnold L. Graff, Esq.
2  Nevada Bar No. 13343
   Ramir M. Hernandez, Esq.
3  Nevada Bar No. 13146
   7785 W. Sahara Avenue, Suite 200
4  Las Vegas, Nevada 89117
   (702) 475-7964; Fax: (702) 946-1345
5  rhernandez@wrightlegal.net
6  *Attorneys for PHH Mortgage Services formerly known as Ocwen Loan Servicing, LLC*

7

8

9

10                **UNITED STATES BANKRUPTCY COURT**

11                      **DISTRICT OF NEVADA**

12  IN RE:                          Case No.: 13-50461-BTB

13  CHRISTOPHER MICHAEL MARINO, and   Chapter 7
14  VALERIE MARGARET MARINO,

15          Debtors                  **MOTION FOR RELIEF FROM
                                     JUDGMENT OR ORDER (RULE 9024)
16                                   AND FOR NEW EVIDENTIARY
                                     HEARING**
17

18                                   **Hearing Date:  December 9, 2020
                                     Hearing Time:  2 p.m.**
19

20  _____

21          PHH Mortgage Services, formerly known as Ocwen Loan Servicing, LLC ("PHH"), by

22  and through its counsel of record, Wright, Finlay & Zak, LLP, hereby files this Motion for Relief

23  from Judgment or Order pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure

24  ("FRBP") and requests an evidentiary hearing thereon.

25          This Motion is based on the pleadings and papers on file with this Court, facts subject to

26  judicial notice, and such other and further evidence and argument as this Court might consider.

27  /././

28  /././

                                       1

# I. **INTRODUCTION**

This is a post-discharge injunction violation case. Pursuant to FRBP Rule 9024 (specifically as incorporating FRCP Rule 60(b)(5) and (6)), PHH seeks to vacate the Court's prior judgment awarding sanctions in favor of Debtors because of a subsequent U.S. Supreme Court decision that makes clear that this court employed an incorrect standard of review in finding PHH in contempt and awarding such significant damages against it. This Court's prior order appears to have considered *the Debtors'* <u>subjective</u> belief to determine what PHH actually intended by the conduct at issue rather than the unrefuted testimony of Appellant's witness as to why the communications were made despite the fact that the Debtors, as the ones seeking contempt sanctions, had the burden of proof by "clear and convincing" evidence.[1]

As was made clear by the U.S. Supreme Court's ruling in *Taggart v. Lorenzen*, 587 U.S. ___, 139 S. Ct. 1795, 1804 (June 3, 2019), the correct standard is that a bankruptcy court may only hold a creditor in civil contempt for attempting to collect on a debt that has been discharged in bankruptcy "if there is no fair ground of doubt as to whether the [discharge] order barred the creditor's conduct." The Court cautioned that contempt is a "severe remedy" and principals of fairness mean that parties must have explicit notice as to what conduct is prohibited before being held in civil contempt.[2] As the High Court held, the appropriate standard is an objective one.[3]

Although *Taggart* came down while this case was on appeal, the decisions of the Supreme Court are generally treated as retroactive as to all cases still pending.[4]

/./.

/./.

/./.

---

[1] *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239, (9th Cir. 1999).
[2] *Taggart*, 139 S. Ct. at 1802.
[3] *Id*, at 1800-01.
[4] *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97 (1993)("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."); *see also In re Freeman*, (B.A.P. 9th Cir. 2019) 608 B.R. 228, 233-34 (applying *Taggart* standard to review of propriety of bankruptcy court's order on contempt motion under prior standard).

1   This Court recently reopened this case after it was remanded from the Ninth Circuit,

2   which held that it lacked jurisdiction to hear PHH's appeal because a final judgment had yet to

3   be entered as the Court had yet to make a ruling as to punitive damages.   Under these

4   circumstances, Rule 60 relief is appropriate because of the intervening case law, especially

5   because a final judgment has yet to be entered.  Because PHH seeks to relief from the prior

6   judgment, it requests a new evidentiary hearing so that this Court may properly consider the

7   evidence under the correct *Taggart* standard and enter a judgment consistent with relevant case

8   law.  To do otherwise risks any judgment this Court makes being reversed for not applying the

9   correct standard.  For these reasons, PHH asks this Court grant its requested relief.

10                          **II. STATEMENT OF FACTS**

11          1.      Debtors purchased the real property commonly known as 780 Beaver Creek

12   Circle, Verdi, California ("Property"), borrowing $325,000.00 ("Loan"), the repayment of which

13   amount was secured by a first Deed of Trust recorded against the Property.

14          2.      PHH, then known as Ocwen, was the loan servicer on the Loan.

15          3.      Debtors filed a voluntary Chapter 7 bankruptcy petition in the United States

16   Bankruptcy Court for the District of Nevada on March 15, 2013,[5] and received a discharge in

17   that bankruptcy on June 18, 2013.[6]

18          4.      The Debtors indicated in their bankruptcy schedule in their petition that they

19   would surrender the Property but never took any steps to actually do so.[7]

20          5.      On November 19, 2015, Debtors filed a Motion to reopen their Chapter 7

21   proceeding so they could seek to hold Ocwen in contempt for putative violations of the discharge

22   and obtain an injunction, punitive damages, and attorney's fees and costs.  The basis for the

23   Motion was correspondence Ocwen allegedly sent to Debtors which Debtors claimed to be in

24   violation of the discharge injunction.[8]

25   /./././

26

27   [5] ECF No. 1
     [6] ECF No. 20.
28   [7] ECF No. 1 at 45-46.
     [8] ECF No. 27.

6.    The Court held an evidentiary hearing on February 25 and 26, 2016.  Debtors first introduced the issue of telephone calls being part of their contempt motion at the February 25, 2016, evidentiary hearing; however, the <u>only</u> actual evidence they provided as to those calls was Mrs. Marino's testimony that she had answered around 20 calls but, with one exception, she did not testify as to the content of any of those calls.  For its part, Ocwen's witness testified that Ocwen believed the written communications were required by applicable State or Federal law and that it did not intend them to be treated as attempts to collect on the discharged debt as most of the documents included bankruptcy disclaimers.[9]

7.    After the evidentiary hearing, the bankruptcy court on July 5, 2016, entered an order that Ocwen had willfully violated the discharge injunction by sending post-discharge 19 written communications (as to which the Court rejected the sufficiency of the bankruptcy disclaimers on most of them) and making 100 telephone calls to Debtors.   The Court awarded the Appellants $119,000.00 (hereinafter "Contempt Order").[10]  However, it denied Debtors' request for punitive damages.[11]

8.    The bankruptcy court subsequently entered an order awarding Debtors' counsel attorney's fees and costs in the amount of $34,955.90.[12]

/././

/././

/././

/././

/././

/././

/././

/././

---

[9] *See* **Exhibit A**, Trans. of Hearing on February 25, 2016 at 101:24-102:12.
[10] ECF No. 60.
[11] *Id.*
[12] ECF No. 126.

9.      Ocwen timely appealed the Contempt Order to the BAP on July 19, 2016 (the "Ocwen First Appeal") and challenged this Court's decision on the following issues: (1) that the bankruptcy court erred in finding that Appellants had presented admissible evidence to substantiate a finding of 100 telephone calls; (2) that the bankruptcy court erred in finding that the correspondence sent by Ocwen to the Appellants violated the discharge injunction in light of bankruptcy disclaimers; (3) that the bankruptcy court erred in finding that the correspondence sent by Ocwen to the Appellants violated the discharge injunction as to the correspondence that was required by State or Federal law; (4) that the bankruptcy court erred in finding that the Appellants had presented admissible evidence sufficient to show they had suffered harm; and (5) that the bankruptcy court erred in denying a Motion for Reconsideration that demonstrated only 35 telephone calls had been made by Ocwen to Appellants.[13]

10.      Appellants filed a cross-appeal, arguing that the bankruptcy court erred in noting it could not award any punitive damages (the "Cross-Appeal").[14]

11.      After briefing, the Ocwen First Appeal and the Cross-Appeal were argued on December 1, 2017, and the BAP filed its Opinion on December 22, 2017, affirming the bankruptcy court's findings against Ocwen but reversed and remanded the bankruptcy court's finding that it could not award *mild* punitive damages against Ocwen ("BAP Order").[15]

12.      Ocwen filed an appeal of the BAP Order to the Ninth Circuit on January 19, 2018 (the "Ocwen Second Appeal").[16]

13.      In the meantime, Debtors filed a Motion seeking to recover fees of $16,950.00 with the BAP.  The BAP denied that Motion on July 3, 2018, expressly finding that the First Appeal was not frivolous, that California Civil Code § 1717 was inapplicable as the underlying action was  not on a contract, and that Ninth Circuit case law was clear that 11 USC § 105(a) did not allow for a discretionary fee award in a bankruptcy appeal.[17]

---

[13] *Cf.* ECF No. 13 in BAP App., Case 16-1229.
[14] *Cf.* ECF No. 27-1 in BAP App., Case 16-1229.
[15] *Cf.* ECF No. 44 in BAP App., Case 16-1229.
[16] ECF No. 54.1 in BAP App., Case 16-1229
[17] *Cf.* ECF No. 61 in BAP App., Case 16-1229.

14.     Debtors filed an appeal to the Ninth Circuit on the issue of attorney's fees and costs (the "Debtors Appeal").  The Ninth Circuit consolidated the appeals on August 22, 2018.[18]

15.     After briefing and oral argument, the Ninth Circuit issued a published opinion, *In re Marino*, (2020) 949 F.3d 483, wherein it dismissed the Second Ocwen Appeal for lack of jurisdiction because the BAP's decision remanding the Ocwen First Appeal for a decision on punitive damages was not a final, appealable order, *including because the bankruptcy court needed to make further findings of fact concerning the punitive damages sought by Debtors*.[19] The Ninth Circuit also denied the Debtors Appeal, affirming the BAP's decision denying Debtors their attorney's fees on appeal ("Ninth Circuit Order").[20]  Debtors' Motion for *en banc* rehearing of that denial was also denied.[21]  On September 24, 2020, Debtors filed a petition for certiorari to the U.S. Supreme Court on that issue.

16.     On September 8, 2020, the bankruptcy court reopened the bankruptcy case.[22]

17.     On September 15, 20202, Debtors filed a Motion to Determine Punitive Damages, with a hearing date set for October 14, 2020.[23]

### III. <u>LEGAL STANDARD</u>

FRBP 9024 applies Rule 60 of the Federal Rule of Civil Procedure to motions for relief from bankruptcy court judgments.  FRCP 60(b) provides:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

---

[18] ECF No. 5 in 9th Cir. App., Case No. 18-60040.
[19] *Id.* at 487-88.
[20] ECF No. 34 in 9th Cir. App., Case No. 18-60040.
[21] ECF No. 42 in 9th Cir. App., Case No. 18-60040
[22] ECF No. 155.
[23] ECF No. 157.

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

In a Rule 60 Motion, a movant must not merely reassert his or her previous contentions,[24] Instead, a movant must present new evidence, ***identify a change in controlling law***, or identify a clear error.[25]  Moreover, a motion for reconsideration cannot be used to raise new arguments that could have been raised earlier in the proceedings.[26]

## IV. <u>LEGAL ARGUMENT</u>

### A. Rule 60 is an appropriate vehicle for setting aside a judgment based on a material change in the governing case law.

Subsections 5 and 6 of FRCP 60 provide <u>independent</u> grounds to grant relief from judgment where, as here, there has been a material change in the governing case law.

For Rule 60(b)(5), the United States Supreme Court has found that subsection provides grounds for relief from judgment when the applying the judgment or prospectively is no longer equitable.[27]  "[T]he Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'"[28]

For Rule 60(b)(6), the Ninth Circuit has also held that material changes in the governing law provide sufficient grounds for granting relief from judgment.[29]  Specifically, the court is "is

---

[24] *See*, *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).
[25] *Id.*
[26] *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)("A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.")(*citing* to *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).
[27] *See*, *Horne v. Flores*, 129 S. Ct. 2579, 2593 (2009).
[28] *Id.* (internal citations omitted).
[29] *See*, *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009)

7

to evaluate the circumstances surrounding the specific motion before the court."[30]    This necessitates that the Court "intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts."[31]

### B.  The Motion is Timely.

Rule 60(c) says a subsection b motion for relief must be made within a reasonable time, and for certain subsections [(b)(1)-(b)(3)], not applicable here, within one year of the entry of the judgment.    For subsections (b)(4)-(b)(6), there is no stated time limit.    In the Ninth Circuit, intervening changes in the case law is to be applied if a final judgment has not been entered.[32] Thus, the instant motion is *per se* timely because as the Ninth Circuit made clear in dismissing Ocwen's appeal a final judgment has yet to be entered in this matter.[33]

### C.  The United States Supreme Court has recently declared the appropriate standard for evaluating discharge injunction violations is *not* subjective.

After this Court had issued its original decision in favor of Debtors, the July 5, 2016 Order of the Bankruptcy Court holding Creditor, Ocwen Loan Servicing, LLC in Contempt and for Sanctions for Violation of the Discharge Injunction, and while the matter was before the Ninth Circuit on Ocwen's appeal, the U.S. Supreme Court handed down its decision in *Taggart, supra*, expressly rejecting <u>*both*</u> the prior, controlling, subjective standard for discharge violations in the Ninth Circuit under *In re Taggart*[34] AND the alternative standard urged by Debtor's counsel and applied by the bankruptcy court, which was "akin to strict liability."[35]

The BAP's *Taggart* ruling, handed down on April 12, 2016, began with the established precedent that a two-part test is required to prove a discharge violation:  (1) the creditor knew the

---

[30] *Id.*
[31] *Id.* (citing to *Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007)).
[32] *See*, *Wasserman v. Mun. Court of Alhambra Judicial Dist.*, 543 F.2d 723, 725 (9th Cir. 1976)("So long as the case is *sub judice*, a federal court must apply a new and supervening rule of federal law when applicable to the issues in the case.").
[33] *See* fn. 19, *supra.*
[34] *In re Taggart*, 548 B.R. 275, 286 (B.A.P. 9th Cir. 2016), *aff'd*, 888 F.3d 438 (9th Cir. 2018), vacated and remanded sub nom. *Taggart v. Lorenzen*, 139 S. Ct. 1795,  (2019).
[35] *Taggart v. Lorenzen*, *supra*, at 1799 (2019).

8

discharge injunction was applicable and (2) the creditor intended the actions which violated the injunction.  "This standard requires evidence showing the alleged contemnor was aware of the discharge injunction and aware that it applied to his or her claim.  Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact-based inquiry ***which implicates a party's subjective belief, even an unreasonable one***."[36]  The Court concluded that "each prong of the Ninth Circuit's two-part test for a finding of contempt in the context of a discharge violation requires a different analysis, and distinct, clear, and convincing evidence supporting that analysis, before a finding of willfulness can be made."[37]  Ultimately, the BAP reversed the lower court's decision because it applied the wrong standard in determining whether the creditor "had the sort of actual knowledge necessary for a finding of willfulness."[38]  This case was the controlling precedent when this Court entered its Contempt Order on July 5, 2016.  However, it does not appear to be the standard that this Court applied, rather this Court's decision seemed to treat the test as one akin to strict liability.

The Ninth Circuit thereafter affirmed the BAP's decision by holding that the creditors had a good faith belief that the discharge injunction did not apply to them.[39]

The U.S. Supreme Court reversed the prior BAP and Ninth Circuit rulings, in *Taggart v. Lorenzen* and held that the prior rulings applying a subjective standard for civil contempt were erroneous *as was the bankruptcy court's application of a standard akin to strict liability*.[40]  Instead, the only proper standard to apply is an **objective one**.[41]  In expressly rejecting the bankruptcy court (and the Debtor's) assertion that a standard akin to strict liability was appropriate, the Supreme Court observed (among other things) that:

> The purposes of automatic stays and discharge orders also differ: A stay aims to prevent damaging disruptions to the administration of a bankruptcy case in the short run, whereas a discharge is entered at the end of the case and seeks to bind

---

[36] *In re Taggart, supra,* at 288 (emphasis added).
[37] *Id.* (internal citations omitted).
[38] *Id.* at 290.
[39] *In re Taggart*, *supra,* 888 F.3d at 444).
[40] *See*, *Taggart v. Lorenzen*, *supra*, at 1799: "We conclude that neither a standard akin to strict liability nor a purely subjective standard is appropriate."
[41] *Id.* at 1802, 1804.

1    creditors over a much longer period. These differences in language and purpose

2    sufficiently undermine Taggart's proposal to warrant its rejection.[42]

3    Instead, the Court held that "[a] court may hold a creditor in civil contempt for violating a

4    discharge order where there is not a "fair ground of doubt" as to whether the creditor's conduct

5    might be lawful under the discharge order."[43]   However, the Court also expressly noted that a

6    party's subjective intent is relevant to determine the appropriate sanction even when the

7    offending party acted in an objectively unreasonable manner.[44]

8        **D. Based on the change in intervening case law, PHH is entitled to relief and this
9        Court should vacate the July 5, 2016 Order and set a new evidentiary hearing.**

10       The Supreme Court's decision in *Taggart* calls into question the equity of this Court's

11   Contempt Order.  Although this Court does not appear to have applied the then controlling test

12   under the BAP's *Taggart* ruling (entered three months prior to the July 5, 2016 Contempt Order),

13   neither did it utilize the Supreme Court's objective test but rather seems to have adopted a

14   standard akin to strict liability, as if this was a violation of the automatic stay rather than the

15   discharge injunction.   Regardless, the Supreme Court's decision in *Taggart* warrants a new

16   evidentiary hearing applying the proper, objective standard as tempered by the Court's

17   acknowledgment that a party's subjective intent is relevant to determine the appropriate sanction

18   even when the offending party acted in an objectively unreasonable manner.[45].

19       **1.  Relief is appropriate under Rule 60(b)(5) because of the change in case law.**

20       In *Horne v. Flores*, the U.S. Supreme Court held that a significant change in law is

21   sufficient cause to grant relief from judgment under FCRP 60(b)(5).[46]   *Taggart* provided just

22   such a significant change in the standard for determining contempt in discharge violation cases.

---

[42] *Id.* at 1804.  The Court also rejected as unworkable the suggestion of Debtor's counsel that a creditor could always seek an advance determination from the bankruptcy court as to whether proposed conduct would violate the discharge injunction. *Id.*  at 1803.

[43] *Id.* at 1804.

[44] *Id.* at 1802: "On the flip side of the coin, a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." (internal citations *omitted*).

[45] *Id.* at 1802: "On the flip side of the coin, a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." (internal citations *omitted*).

[46] *Supra,* 129 S. Ct. at 2593.

Whereas, before the Supreme Court's decision in *Taggart,* a bankruptcy court was supposed to consider the creditor's subjective intent (even if unreasonable) in deciding whether an alleged discharge injunction violation was a contempt, but some bankruptcy court's nonetheless applied a standard akin to strict liability, it is beyond dispute that the bankruptcy courts are now required to consider 1) whether "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful"[47]; and 2) how the party's subjective intent affected damages.[48]

The record from the previous evidentiary hearing, as well as the July 5, 2016 Order, is bereft of any finding that Ocwen's violation was objectively unreasonable or that Ocwen's subjective intent warranted damages. To the contrary, they at least suggest that this Court took an approach akin to strict liability, as if this were a violation of the automatic stay rather than of the discharge injunction. However, the transcript from the hearing which formed the basis for the written order reflected that the Court adopted *Debtors' subjective belief* that Ocwen had only one purpose in mind for sending the letters and phone calls *but provides no evidence from the record as to that intent*:

> Ocwen could not have been doing anything but trying to get the debtor to give them some more money, either for insurance or agree to be responsible for the house that was vacant, even after they had -- even after Ocwen had – received stay relief. I think that Ocwen, rather than foreclose on the property, which they could have done approximately six -- well, approximately three months after the case was filed, waited two years to foreclose, hoping that if they sent enough letters and gave enough calls, that the debtor would ultimately pay them some money for something. That's all I can think.[49]

There was no finding from the Court that there was no a fair ground of doubt that Ocwen's conduct might be lawful and Ocwen presented evidence, authority and argument to support that it has an objectively reasonable basis for believing that its communications to Debtors were

---

[47] *Taggart v. Lerenzen, supra,* at 1799.
[48] *Id,* at 1802.
[49] *See* Exhibit B, Trans. of Hearing on June 20, 2016 at 7:10-19.  As held in *In re Cantrell,* 605 B.R. 841, 859 (Bankr. W.D. Mich. 2019), debtor bears the "burden of proving that the phone calls placed by [creditor] to the Debtor were attempts to collect the mortgage debt in violation of the discharge injunction" and not for some other purpose.

required under applicable law and contained appropriate disclaimers.[50]  The absence of such a finding has been held to be reversible error in light of *Taggart*.[51]

The Court also made an error when it awarded damages to Debtor in the amount of $1,000.00 per violation.[52]  There was no analysis by the Court as to whether such damages where appropriate based on Ocwen's subjective intent, as is now required under *Taggart*.  Nor could there have been since the Supreme Court's ruling in *Taggart v. Lorenzen* had yet to be rendered.

The July 5, 2016 Order is indisputably not consistent with superseding case law.   In the Ninth Circuit, this procedural set of facts requires vacating the prior judgment because a court is bound by intervening case law while a case is still pending and a final judgment has not been entered.[53]   Notably, the BAP has already reversed and remanded one case because the bankruptcy court did not apply the Supreme Court's *Taggart* standard.  In *In re Freeman*, the BAP reversed and remanded a bankruptcy court decision because *Taggart* changed the standard for discharge violations and the bankruptcy court's prior ruling did not apply the correct test.[54]

Similarly, in light of the material change in the appropriate standard of review wrought by the Supreme Court's *Taggart* ruling, this Court should vacate and reconsider its July 5, 2016 Order pursuant to the authority under FRCP 60(b)(5).

/././

---

[50] *See* **Exhibit B**, Trans. of Hearing on February 26, 2016 at 13:4-20.   *See also In re Roth,* 935 F.3d 1270, 1276-78 (11th Cir. 2019)("The *Taggart* standard is a rigorous one: in order to find that sanctions are appropriate here, we would have to hold that 'there is no objectively reasonable basis for concluding that [Creditor's] conduct might be lawful.'"   Holding test did not permit finding the communications at issue to be a violation).  As noted above, *Taggart, supra,* at 1803, rejected Debtor's counsel's argument that a creditor could always ask the bankruptcy court for an advance determination as to whether its proposed conduct would violate the discharge injunction, so objectively reasonable grounds cannot be negated where there is a statutory or judicial basis indicating that the creditor's conduct was permissible.

[51] *Fidelity and Deposit Company of Maryland v. TRG Venture Two, LLC,* 2019 WL 5208853 at *6 (N.D. Ill., E.D.. Oct. 16, 2019).

[52] *Id.* at 9:16.18.

[53] *See, Wasserman,* 543 F.2d at 725, fn. 32, *supra.*

[54] 608 B.R. 228, 234 (B.A.P. 9th Cir. 2019)("Given the change in controlling law [*Taggart*], we must vacate the decision and remand for a decision under the standard now required by the Supreme Court.").

**2.  Alternatively, relief under Rule 60(b)(6) is appropriate as a matter of equity.**

This Court should also grant relief under Rule 60(b)(6).  Although generally a catch-all for relief from judgment not previously covered, this subsection has been applied in instances where there has been an intervening, material change in the governing case law.[55]  In such cases, the Court is to evaluate the circumstances surrounding the case and balance numerous factors, including the finality of the judgment with the competing concern that justice be done.[56]  As the Ninth Circuit recently explained in *Henson v. Fidelity National Financial, Inc.*:

> We have previously recognized that a change in the controlling law can— but does not always—provide a sufficient basis for granting relief under Rule 60(b)(6). *See Phelps*, 569 F.3d at 1132–33. To assess a Rule 60(b)(6) motion "predicated on an intervening change in the law," a district court must "evaluate the circumstances surrounding the specific motion before the court." *Id.* at 1133. This "case-by-case inquiry ... requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Id.*[57]

The Ninth Circuit held that a *non-exhaustive* list of six factors from *Phelps* should be applied to evaluate whether Rule 60(b)(6) relief was warranted:  (1) the nature of the intervening change in the law; (2) movant's diligence in seeking relief; (3) the parties' reliance interest in the finality of the judgment; (4) the delay between the judgment and the motion; (5) the relationship between the original judgment and the change in the law; and (6) concerns of comity.[58]

As to the first factor, the Supreme Court's decision in *Taggart* indisputably changed the prior standard in the Ninth Circuit for determining whether a creditor violated the discharge injunction BUT, regardless of which of the two standards this Court *should have* applied in ruling on the contempt motion here, it does not appear to have applied either but, instead, adopted a standard akin to strict liability.  As the Ninth Circuit explained:  "courts considering this factor should not in rote fashion rely on the conclusion from a different context that any particular type of change in the law favors or disfavors relief. Instead, a district court should

---

[55] *See*, *Phelps*, 569 F.3d at 1133, *supra.*
[56] *Id.*
[57]  943 F.3d 434, 444 (9th Cir. 2019).
[58] *Id.* at 446-54 (noting additional factors that should also have been considered in that case).

weigh whether the specific nature of the change in the law in the case before it makes granting relief more or less justified under all of the circumstances, and should support its conclusion with a reasoned explanation grounded in the equitable considerations raised by the case at bench."[59] Thus, this factor clearly favors relief.

In terms of the second factor, PHH is moving for relief approximately one month after this Court reopened the case.  PHH could not have moved for relief until the case was reopened.

The third factor is actually inapplicable here as there has been no final judgment.  Indeed, as recognized in *Henson, supra*, the requisite reliance is not an abstract concept but turns on "whether 'the final judgment being challenged has caused one or more of the parties to change his legal position in reliance on that judgment' such that granting the motion for relief would 'undo the past, executed effects of the judgment.' [citation omitted]"[60]

Although the fourth factor would seem to be somewhat duplicative of the second factor, it would seem to either be inapplicable here, as there was no final judgment, or satisfied for the same reasons as the second factor.  As stated in *Henson, supra*: "In this case, the judgment never truly became final on appeal, and in any case, [moving parties] moved for relief shortly after the Ninth Circuit remanded the case to the district court."[61]

It is beyond legitimate dispute that the fifth factor favors relief here as the Supreme Court's change as to the proper standard to apply goes to the very heart of whether the July 5, 2016 Order properly found Ocwen to be in contempt. The Ninth Circuit held that: "[This] factor directs courts to examine closely the original and intervening decisions at issue in a particular motion for [Rule 60(b)] relief predicated on an intervening change in the law: if there is 'a close connection between the two cases, the court [will be more likely to] f[i]nd the circumstances sufficiently extraordinary to justify disturbing the finality of the [original] judgment.'"[62]

---

[59] *Id.* at 446-47.

[60] *Id.* at 450; further observing at 451: "Because the present case was still pending on appeal when [the Supreme Court case that changed the law] was decided, and was then remanded to the district court for further proceedings, [the opposing party] could not reasonably have believed that the dismissal was immutably final."  The same is true of this proceeding.

[61] *Id.* at 452.

[62] *Id.*, quoting *Phelps*, 569 F.3d at 1139.

14

1    Comity, the sixth factor, is inapplicable here as there is no concern about any need for

2 comity between independent, sovereign states and the federal courts presented by this case.  The

3 Supreme Court's decision applies to all courts considering contempt for violations of the

4 discharge injunction, not just those in the Ninth Circuit.

5    As an additional factor warranting relief, here, no final judgment has been entered in this

6 case because, as noted in the Ninth Circuit Order, this Court is still to consider the question of

7 punitive damages.  Thus, this Court can and should reconsider its July 5, 2016 Order, applying

8 the proper standard announced by the Supreme Court in *Taggart*.  It would be inequitable and

9 unjust to decide punitive damages based upon the existing July 5, 2016 Order as it was based on

10 an incorrect test as to whether Ocwen should be found in contempt of the discharge injunction.

11 As recognized in *Henson, supra,* at 439:  Rule 60(b)(6) "is a grand reservoir of equitable power

12 that allows courts to grant relief from final judgment for 'any' reason that 'justifies relief.' "

13    The factors thus all either weigh in favor of granting relief or are inapplicable.

14    **3.  This Court should order a new evidentiary hearing under the proper standard.**

15    A Rule 60 motion can warrant ordering a new trial or evidentiary hearing.[63]  A new

16 evidentiary hearing is appropriate under the circumstances of this case because this Court

17 appears to have utilized an incorrect standard of review akin to strict liability.  Instead, Ocwen's

18 conduct needs to be evaluated under the objective test as directed by the Supreme Court's

19 *Taggart* ruling.  In the interest of fairness to the parties, PHH therefore respectfully requests that

20 this Court order a new evidentiary hearing to consider whether there was "no objectively

21 reasonable basis for concluding that the [Ocwen's] conduct might be lawful under the discharge

22 order."   In this regard, PHH notes that an evidentiary hearing would, in any event, be necessary

23 for this Court to properly consider the question of whether punitive damages should be awarded

24 and, if so, the appropriate amount.  Indeed, the need for such fact finding by this Court was

25

26 [63] *See eg.*, *Parks By & Through Parks v. Collins*, 761 F.2d 1101, 1104 (5th Cir. 1985)(holding
that granting a Rule 60 motion is akin to granting a motion for a new trial); *Zurich N. Am. v.*
27 *Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005)(holding new trial may be ordered under
FRCP 60(b)(2));  *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 382 fn. 7 (3d Cir. 1996)(court
28 discusses new trial under FRCP 60(b)(30).

15

expressly part of the basis upon which the Ninth Circuit determined that Ocwen's appeal was not yet ripe and should be dismissed.[64]

### V. <u>CONCLUSION</u>

Intervening case law provides this Court grounds to grant PHH's requested relief under FRCP 60(b)(5) or (b)(6).  Because such relief would require the prior judgment to be vacated, PHH respectfully requests that this Court order a new evidentiary hearing so to that court may consider all the evidence on the *Taggart v. Lorenzen* standard.

Respectfully submitted

Dated: October 6, 2020

WRIGHT, FINLAY & ZAK, LLP


/s/ *Ramir M. Hernandez, Esq.*
Ramir M. Hernandez, Esq.
Nevada Bar No. 13146
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
(702) 666-0632; Fax: (702) 946-1345
rhernandez@wrightlegal.net
*Attorneys for PHH Mortgage Services formerly known as Ocwen Loan Servicing, LLC*

---

[64] 949 F.3d, *supra*, at 487-88.

## <u>CERTIFICATE OF SERVICE</u>

1.    On October 6, 2020, I served the following document(s):

   **MOTION FOR RELIEF FROM JUDGMENT OR ORDER (RULE 9024) AND FOR NEW EVIDENTIARY HEARING**

2.    I served the above-named document(s) by the following means to the persons as listed below:

   (Check all that apply)

■ a.   ECF System (You must attach the "Notice of Electronic Filing", or list all persons and address and attach additional paper if necessary)

   SETH J. ADAMS on behalf of Creditor DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR GMACM MORTGAGE LOAN TRUST
   sadams@woodburnandwedge.com, jgoff@woodburnandwedge.com

   CHRISTOPHER PATRICK BURKE on behalf of Debtor CHRISTOPHER MICHAEL MARINO
   atty@cburke.lvcoxmail.com

   CHRISTOPHER PATRICK BURKE on behalf of Debtor CHRISTOPHER MICHAEL MARINO
   attycburke@charter.net

   CHRISTOPHER PATRICK BURKE on behalf of Joint Debtor VALERIE MARGARET MARINO
   atty@cburke.lvcoxmail.com

   CHRISTOPHER PATRICK BURKE on behalf of Joint Debtor VALERIE MARGARET MARINO
   attycburke@charter.net

   W. DONALD GIESEKE
   wdg@renotrustee.com, dgieseke@ecf.axosfs.com

   RAMIR M. HERNANDEZ on behalf of Creditor PHH MORTGAGE SERVICES, FORMERLY KNOWN AS OCWEN LOAN SERVICING, LLC
   rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

   DANA JONATHON NITZ on behalf of Creditor OCWEN LOAN SERVICING LLC
   dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

U.S. TRUSTEE - RN - 7
USTPRegion17.RE.ECF@usdoj.gov

■ b.   United States mail, postage fully pre-paid (List persons and addresses.  Attach additional paper if necessary)

CHRISTOPHER MICHAEL MARINO
POB 565
VERDI, NV 89439

VALERIE MARGARET MARINO
POB 565
VERDI, NV 89439

☐ c.   Personal Service (List persons and addresses.  Attach additional paper if necessary)

I personally delivered the document(s) to the persons at these addresses:

_____

☐     For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐     For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d.   By direct email (as opposed to through the ECF System) (List persons and email addresses.  Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e.   By fax transmission (List persons and fax numbers.  Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.   A copy of the record of the fax transmission is attached.

18

☐ f.    By messenger (List persons and addresses.  Attached additional paper if necessary)

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service. (A declaration by the messenger must be attached to the Certificate of Service).

I declare under penalty of perjury that the foregoing is true and correct.

Signed on Tuesday, October 06, 2020.

/s/   Jason Craig
An employee of Wright, Finlay & Zak, LLP

19

Exhibit A

Exhibit A

Exhibit A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)


```
                               .   Case No.  13-50461-BTB
IN RE:                         .
                               .   Chapter 7
CHRISTOPHER MICHAEL MARINO     .
and VALERIE MARGARET MARINO,   .   300 Booth Street
                               .   Reno, NV 89509
              Debtors.         .
                               .   Thursday, February 25, 2016
. . . . . . . . . . . . . . .      10:05 a.m.
```

TRANSCRIPT OF EVIDENTIARY HEARING RE: DOC# 27 MOTION TO REOPEN
CHAPTER 7 CASE UNDER 11 U.S.C. 350 AND F.R.B.P. 5010 TO HOLD
CREDITORS IN CONTEMPT AND FOR SANCTIONS FOR VIOLATION OF THE
DISCHARGE INJUNCTION 11 U.S.C. 524(A)(2). FEE AMOUNT 260.,
MOTION FOR CONTEMPT, MOTION FOR SANCTIONS FOR VIOLATION OF THE
DISCHARGE INJUNCTION FILED BY CHRISTOPHER PATRICK BURKE ON
BEHALF OF CHRISTOPHER MICHAEL MARINO, VALERIE MARGARET MARINO
BEFORE THE HONORABLE BRUCE T. BEESLEY
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            CHRISTOPHER PATRICK BURKE, ESQ.
                            702 Plumas Street
                            Reno, NV 89509
                            (775) 333-9277

For Ocwen Loan
Servicing, LLC:             Wright, Finlay & Zak
                            By:  SEAN N. PAYNE, ESQ.
                            7785 West Sahara Avenue
                            Suite 200
                            Las Vegas, NV 89117
                            (702) 475-7964




Audio Operator:             Illuminada Starzyk, ECR


Transcription Company:      Access Transcripts, LLC
                            10110 Youngwood Lane
                            Fishers, IN 46038
                            (855) 873-2223
                            www.accesstranscripts.com

       Proceedings recorded by electronic sound recording,
         transcript produced by transcription service.

2

<u>I N D E X</u>
<u>2/25/16</u>

| <u>WITNESSES:</u> | <u>DIRECT</u> | <u>CROSS</u> | <u>REDIRECT</u> | <u>RECROSS</u> |
|---|---|---|---|---|
| <u>FOR DEBTORS</u>: | | | | |
| Christopher Michael Marino | 7 | 54 | 76 | 80 |
| Bernadette O'Kane | 83 | -- | -- | -- |
| Valerie Marino | 145 | 156 | 160 | -- |
| | | | | |
| <u>FOR THE LENDER</u>: | | | | |
| Sony Prudent | 95 | 117 | 137 | 141 |

| <u>EXHIBITS:</u> | <u>ADMITTED</u> |
|---|---|
| Debtors' Exhibit 1 through 5 | 164 |
| Debtors' Exhibit 6, Pages 39 and 40 | 30/164 |
| Debtors' Exhibit 6-A through 6-W | 33 |
| Debtors' Exhibit 7, Pages 99 and 100 | 164 |
| Debtors' Exhibit 7, Pages 179 through 181 | 166 |
| Debtors' Exhibit 7, Pages 182 and 183 | 15/166 |
| Debtors' Exhibit 7, Pages 185 and 186 | 26 |
| Debtors' Exhibit 7, Pages 189 and 191 | 166 |
| Debtors' Exhibit 7, Pages 201 through 203 | 165 |
| Debtors' Exhibit 8 | 11 |
| Debtors' Exhibit 9 | 167 |

Prudent - Direct                    101

1  for the bankruptcy department.

2  Q    Did you review those policies and procedures before coming

3  here for this hearing today?

4  A    Yes.

5  Q    Thank you.

6          THE COURT:  So let me make sure.  You're trained in

7  how the bankruptcy department operates?

8          THE WITNESS:  We're trained in their procedures, as

9  well as reviewing.  There is a portal with all of the policies

10 and procedures for different departments.

11         THE COURT:  And do you work in the bankruptcy

12 department?

13         THE WITNESS:  No, I work in the legal department.

14         THE COURT:  Okay.

15 BY MR. PAYNE:

16 Q    Have you had history of working in the servicing -- or in

17 a bankruptcy servicing department in the past?

18 A    No.

19         THE COURT:  I'm going to overrule your objection.  I

20 -- there may be an issue as to how qualified he is, but I think

21 he can testify to it, and you can discover that on cross.

22         MR. BURKE:  Thank you.

23 BY MR. PAYNE:

24 Q    So, Mr. Prudent, I'm going to revisit.  Can you identify

25 reasons or occasions where notices would be sent after the flag

Prudent - Direct                              102

1  is raised in the system that bankruptcy has been filed and a

2  discharge has been entered?

3  A    They would be sent pursuant to federal regulation, state

4  regulation, as well as per the deed of trust.

5  Q    Are these notices not intended to collect on the debt when

6  they're being sent?

7  A    There would be a disclaimer that there's no -- bankruptcy

8  disclaimer, letting them know that this is not an attempt to

9  collect a debt, if you've been discharged or in active

10 bankruptcy.  It's for informational purposes for the account

11 and to be in compliance with the laws that are required for

12 loan servicing.

13 Q    If the bankruptcy flag was not raised in your system,

14 would that disclaimer appear on your regular account statements

15 and notices?

16 A    You're saying -- are we saying active bankruptcy or --

17 Q    Active bankruptcy, correct.

18        THE COURT:  What's the difference between an active

19 bankruptcy and something that's not an active bankruptcy?

20        THE WITNESS:  Active bankruptcy is -- would be a BK

21 flag, letting us know that the bankruptcy is still active.  BKC

22 [sic] says that the bankruptcy has been discharged.

23        THE COURT:  Okay.  And BKC [sic] is not an active

24 bankruptcy?

25        THE WITNESS:  No, the bankruptcy has been discharged.

1  making that happen.

2           THE COURT:  Okay.

3           MR. PAYNE:  Would you like me to contact your

4  chambers to let you know by this evening or --

5           THE COURT:  Well, there's --

6           MR. PAYNE:  It's just going to take probably --

7           THE COURT:  -- nobody in my chambers but me, so why

8  don't you give me your contact information, contact so you

9  know.  We're good?  All right.  So thank you, guys, very much.

10 I appreciate the job you did.  The exhibits were good.  I think

11 the arguments were very good and the presentation of evidence

12 was very good.  I think everybody did a good job.  I'm anxious

13 to hear your closing arguments, and I will -- I don't know that

14 I will rule tomorrow, but I'll rule promptly.

15          MR. PAYNE:  Thank you, Your Honor.

16          THE COURT:  Thank you.  We'll be in recess.  Thank

17 you.

18      (Proceedings concluded at 2:51 p.m.)

19                      *  *  *  *  *

20

21

22

23

24

25

173

1          **C E R T I F I C A T I O N**

2

3          I, Ilene Watson, court-approved transcriber, hereby

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9

10  ILENE WATSON, AAERT NO. 447     DATE:  June 30, 2016

11  ACCESS TRANSCRIPTS, LLC

12

13

14

15         **C E R T I F I C A T I O N**

16

17         I, Lisa Luciano, court-approved transcriber, hereby

18  certify that the foregoing is a correct transcript from the

19  official electronic sound recording of the proceedings in the

20  above-entitled matter.

21

22

23

24  LISA LUCIANO, AAERT NO. 327     DATE:  June 30, 2016

25  ACCESS TRANSCRIPTS, LLC

<u>Exhibit B</u>

<u>Exhibit B</u>

<u>Exhibit B</u>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|                          |   |                            |
|--------------------------|---|----------------------------|
|                          | . | Case No.  13-50461-BTB     |
| IN RE:                   | . |                            |
|                          | . | Chapter 7                  |
| CHRISTOPHER MICHAEL MARINO | . |                          |
| and VALERIE MARGARET MARINO,| . | 300 Booth Street        |
|                          | . | Reno, NV  89509            |
| Debtors.                 | . |                            |
|                          | . | Friday, February 26, 2016  |
| . . . . . . . . . . . . . | . | 10:10 a.m.                |

TRANSCRIPT OF CONTINUATION OF EVIDENTIARY HEARING
RE: DOC# 27 MOTION TO REOPEN CHAPTER 7 CASE UNDER 11 U.S.C. 350
AND F.R.B.P. 5010 TO HOLD CREDITORS IN CONTEMPT AND FOR
SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION 11 U.S.C.
524(A)(2). FEE AMOUNT 260., MOTION FOR CONTEMPT, MOTION
FOR SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION
FILED BY CHRISTOPHER PATRICK BURKE ON BEHALF OF
CHRISTOPHER MICHAEL MARINO, VALERIE MARGARET MARINO
BEFORE THE HONORABLE BRUCE T. BEESLEY
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          CHRISTOPHER PATRICK BURKE, ESQ.
                          702 Plumas Street
                          Reno, NV 89509
                          (775) 333-9277

For Ocwen Loan
Servicing, LLC:           Wright, Finlay & Zak
                          By:  SEAN N. PAYNE, ESQ.
                          7785 West Sahara Avenue
                          Suite 200
                          Las Vegas, NV 89117
                          (702) 475-7964

Audio Operator:           David Lindersmith, ECR

Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46038
                          (855) 873-2223
                          www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

1        (Proceedings commence at 10:10 a.m.)

2            THE COURT:  So this is the time set for oral argument

3    in the case of <u>In re Christopher and Valerie Marino</u>, Bankruptcy

4    Number 13-50461, adversary proceeding.  Oh, that's it.  The

5    adversary proceeding is 13-50461.  Appearances, please?

6            MR. BURKE:  Good morning, Your Honor.  Christopher

7    Burke for the Marinos who are present.

8            MR. PAYNE:  Good morning, Your Honor.  Sean Payne for

9    Ocwen.

10           THE COURT:  Mr. Burke, you have the burden of proof.

11   Please go first.

12           MR. BURKE:  Thank you, Your Honor.  The Marinos

13   appreciate being allowed to have their day in court.

14           To Ocwen, the Marinos were Number 0601363107, but I

15   say to the Court they're not a number; they're people.  In

16   2001, they were blessed with their dream house.  They paid on

17   it for the next eight or nine years.  Mr. Marino lost his job.

18   Ms. Marino's parents were sick.  They had to travel to Canada

19   to take care of them.  Eventually, she ended up losing her job.

20           They repeatedly tried to modify their loan to keep

21   the house.  They would send documents in over and over.  As

22   I've heard a hundred times in other cases, "We didn't get this

23   document.  We didn't get that document."

24           THE COURT:  But that was with the prior lender, was

25   it not?

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

13

1          MR. PAYNE:  -- in relation to the ones that were

2  required to be sent in that chart.

3          THE COURT:  All right.

4          MR. PAYNE:  "These statements that must be sent

5  annually shall be submitted to the borrower not less than once

6  for each 12-month period."

7          If Ocwen doesn't comply with sending out these annual

8  statements, subsection (d) sets forth certain penalties, and I

9  quote:

10          "In the case of each failure to submit a statement to

11          a borrower as required under subsection (c), the

12          secretary shall assess to the lender or escrow

13          servicer failing to submit the statement a civil

14          penalty for each such failure, which may not exceed a

15          hundred thousand dollars annually."

16          Additionally, Your Honor, there was a discussion

17  about phone calls and why some of these phone calls were

18  required.  These phone calls, and many of them were required

19  prior to Ocwen's ability to proceed with the foreclosure

20  process pursuant to California Civil Code Section 2923.55.

21          THE COURT:  2923.55?

22          MR. PAYNE:  Correct, Your Honor.

23          THE COURT:  Okay.

24          MR. PAYNE:  This section states that, I quote:

25          "A mortgage servicer shall contact the borrower in

30

```
1           MR. BURKE:  Thank you.

2           THE COURT:  Yeah, oh, sorry.

3           THE CLERK:  Did you want a date for the hearing?

4           THE COURT:  Yeah, that would be a good idea.

5           THE CLERK:  Okay.  Ninety days out, Your Honor, is

6   around Friday, June the 3rd at 10 a.m.

7           THE COURT:  Does that work for everyone?

8           MR. PAYNE:  Is it okay for me to appear

9   telephonically --

10          THE COURT:  Absolutely.

11          MR. PAYNE:  -- or via video?

12          THE COURT:  Yeah.  I'm not going to allow argument.

13  I'm just going to make a decision.  You certainly can appear

14  telephonically.

15          MR. BURKE:  Thank you.

16          THE COURT:  Thank you.  Thank you.

17          MR. MARINO:  Thank you.

18          THE COURT:  We'll be in recess.

19          THE CLERK:  All rise.

20      (Proceedings concluded at 10:53 a.m.)

21                          * * * * *

22

23

24

25
```

31

1                     **C E R T I F I C A T I O N**

2

3          I, Ilene Watson, court-approved transcriber, hereby

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9   _____

10  ILENE WATSON, AAERT NO. 447       DATE:   June 30, 2016

11  ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

