*EXHIBIT 'A'*



# IN RE GRAVEL

Chapter 13 Case #11-10112 Chapter 13 Case #11-10281 Chapter 13 Case #12-10512.

Email | Print | Comments (0)

**View Case**  **Cited Cases**

601 B.R. 873 (2019)

*IN RE: Nicholas and Amanda GRAVEL, Debtors. In re: Allen and Laurie Beaulieu, Debtors. In re: Matthew and Emilie Knisley, Debtors.*

United States Bankruptcy Court, D. Vermont.

Signed June 27, 2019.

*Attorney(s) appearing for the Case*

Mahesha Subbaraman, Esq., Subbaraman PLLC, Minneapolis, Minnesota, For the Trustee.

Alexandra Edelman, Esq., Primmer Piper Eggleston & Cramer, PC, Burlington, Vermont, For the Creditor.

[601 B.R. 878]

## MEMORANDUM OF DECISION

## ON REMAND FROM U.S. DISTRICT COURT, IMPOSING SANCTIONS ON PHH MORTGAGE CORPORATION

**Colleen A. Brown,** *United States Bankruptcy Judge.*

The U.S. District Court remanded this matter for this Court to redetermine the amount of sanctions to be imposed on PHH Corporation ("PHH") for its violations of Bankruptcy Rule 3002.1 and Debtor Current Orders, with a focus on the scope of this Court's statutory and inherent authority to impose punitive sanctions. This Court has fulfilled that remand, based on the caselaw to which the District Court pointed, and a recent Supreme Court decision that affirmed the authority of bankruptcy courts to impose sanctions. See Taggart v. Lorenzen, ___ U.S. ___, 139 S.Ct. 1795, ___ L.Ed.2d ___ (2019).

For the reasons set forth below, the Court finds, first, it has the authority pursuant to Rule 3002.1, pertinent caselaw, and its inherent powers, to impose punitive sanctions on PHH for its violations of Rule 3002.1; second, it has the authority, pursuant to § 105(a) and its inherent powers, to sanction PHH for its breach of the Debtor Current Orders in the Gravel and Beaulieu cases; third, there are specific dollar amount caps which set the outer limits of "modest," or "less than serious," sanctions; fourth, those caps may be adjusted to correlate to the present value of those dollar amounts; fifth, this Court has the authority to impose punitive sanctions on PHH for its Rule and Court Order violations, provided the amount of the sanction imposed in each case does not exceed the caselaw-defined cap for a non-serious sanction; and sixth, based on the facts and circumstances of these cases, it is appropriate for PHH to pay the sanctions for its Rule 3002.1 violations to the chapter 13 trustee (the "Trustee") and pay the sanctions attributable to its Court Order violations to Legal Services Vermont.

Based on these findings, the Court (1) is reducing the combined sanction from $225,000 to $175,000 in the Gravel case, reducing the combined sanction from $125,000 to $100,000 in the Beaulieu case, and leaving intact the sanction of $25,000 in the Knisley case; and (2) directing PHH to pay the portion of the sanctions allocable to PHH's violation of the Rule 3002.1 in each of the three cases, i.e., $25,000 per case, to the Trustee, and directing PHH to pay the portion of the sanctions allocable to PHH's violation of the Debtor Current Orders, i.e., $150,000 in the Gravel case and $75,000 in the Beaulieu case, to Legal Services Vermont (f/k/a Legal Services Law Line of Vermont).

## I. JURISDICTION

> If, after the chapter 13 debtor has completed payments under the plan and the case has been closed, the holder of a claim secured by the debtor's principal residence seeks to recover amounts that should have been but were not disclosed under this rule, the debtor may move to have the case reopened in order to seek sanctions against the holder of the claim under subdivision (i).

FED. R. BANKR. P. 3002.1 Advisory Committee's 2011 note.

This places enormous pressure on debtors to monitor the statements issued by creditors following their discharges, and to

[601 B.R. 911]

take measures to protect themselves from efforts to collect unauthorized fees and expenses, and to protect their homes from possible foreclosure. This underscores the critical debtor-protector role debtors' attorneys must play. Many homeowners facing foreclosure are in financial crisis and lack effective legal representation. See Melanca Clark & Maggie Barron, Foreclosures: A Crisis in Legal Representation, BRENNAN CENTER FOR JUSTICE, p. 12 (2009) (finding many homeowners possess legal defenses that could bar foreclosure, but cannot effectively raise them absent the assistance of counsel). Access to a competent attorney, who will recognize creditor violations and advocate zealously on a debtor's behalf, is one of the most essential tools for protecting debtors' fresh starts and accomplishing the goals of Rule 3002.1 and Debtor Current Orders. See In re Miller, 2015 Bankr. LEXIS 4530 (Bankr. D. Vt. 2015). As the Brennan Center concluded,

> The loan servicers and lenders invariably have counsel whenever they take action against a homeowner for alleged default of the mortgage terms. Providing lawyers for low- and moderate- income homeowners would level the playing field, and help to ensure that banks and other institutions that operate in economically distressed communities do so according to the rule of law.

Clark & Barron, supra, at 16-17.

Mindful of the distress many homeowners experience in trying to defend against actions commenced by mortgage creditors with experienced counsel, this Court reiterates its belief, as originally stated in the Sanctions Decision, that "the best way to protect consumer debtors who cannot afford to dispute and litigate the assessment of improper post-petition charges — and thus are at risk of having their fresh starts diluted[,]" is to direct PHH to pay sanctions to a pro bono legal service provider (doc. #82, p. 17). The Court remains convinced it is equitable, and serves the interests of justice, to direct PHH to pay the sanctions flowing from PHH's violations of the Debtor Current Orders, i.e., the $150,000 sanction in the Gravel case and the $75,000 sanction in the Beaulieu case, to Legal Services Vermont.

## VI. CONCLUSION

For the reasons set forth above, the Court reaches the following conclusions with respect to the six interlocking legal issues presented. First, this Court has the authority to issue punitive sanctions against PHH for its violations of Bankruptcy Rule 3002.1, in all three of these cases, based on the detailed explanations of the Rule's purpose and the intent of its drafters, as set out in the records of the Advisory Committee that formulated the Rule, and the court decisions which constitute persuasive authority regarding this question, in their analysis of analogous or similar language in Bankruptcy Rule 3001(c) and Federal Civil Rule 37. Second, this Court has authority to sanction PHH for its breach of the Debtor Current Orders in the Gravel and Beaulieu cases, pursuant to § 105(a) and its inherent powers. Third, the sanctions this Court imposes on PHH herein fall within the caselaw definitions of "modest" and "less than serious" sanctions, from the Second, Sixth and Ninth Circuits, i.e., the Circuits to which the Remand Decision directed this Court's attention. Fourth, that same caselaw provides a sound basis for this Court to take into account PHH's corporate status, the repetitive nature of its violations, and its relative wealth and ability to pay in setting the amount of the sanctions. Fifth, based on the well-established jurisprudence that assigns upper monetary limits to the various categories of sanctions germane to this

[601 B.R. 912]

decision, as well as the more recent trial and appellate level decisions that adjust those dollar amounts to reflect present dollar value, this Court concludes it is proper to apply the monetary caps, adjusted to reflect their value in 2019 dollars. Sixth, the Court finds that although the chapter 13 Trustee has not documented the number of hours he or his pro bono attorney have spent in addressing the myriad issues raised in these cases, it is clear that (a) their efforts shielded the Debtors from having to pay improper charges and from incurring the cost of legal actions that might have flowed from a failure to pay them, and (b) it was — and will continue to be — within the scope of the Trustee's duties to vigilantly monitor mortgage creditors' compliance with Rule 3002.1, and as such, it is fair to direct that portion of the sanctions allocable to PHH's violation of Rule 3002.1 ($75,000) to the chapter 13 Trustee. Analogously, the fact that the Debtors did not suffer financial harm when PHH violated the Debtor Current Orders in the Gravel and Beaulieu cases does not diminish the need to impose sanctions on PHH for punitive and deterrent purposes. It is most appropriate that PHH pay these sanctions ($225,000) to Legal Services Vermont, the premier provider of pro bono legal services to the individuals who are most vulnerable to harm when a creditor fails to adhere to the injunctions in Debtor Current Orders, and most in need of protection from mortgagors who do not play by the rules.

Accordingly, and pursuant to its mandate on remand, the Court (1) reduces the combined sanction from $225,000 to $175,000 in the Gravel case, reduces the combined sanction from $125,000 to $100,000 in the Beaulieu case, and leaves intact the $25,000 sanction in the Knisley case; (2) directs PHH to pay the sanctions for violations of court orders, i.e., $150,000 in the Gravel case and $75,000 in the Beaulieu case, to Legal Services Vermont; and (3) directs PHH to pay the sanctions for violations of Rule 3002.1, i.e., $25,000 in each of the three cases, to the chapter 13 Trustee, as more fully described in the accompanying Order.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law, and implementation of the Remand Decision.

## ORDER

## ON REMAND FROM U.S. DISTRICT COURT, IMPOSING SANCTIONS ON PHH MORTGAGE CORPORATION

For the reasons set forth in the memorandum of decision of even date, the Court finds, first, it has the authority pursuant to the Rule 3002.1, pertinent

caselaw, and its inherent powers, to impose punitive sanctions on PHH for its violations of Rule 3002.1; second, it has the authority, pursuant to § 105(a) and its inherent powers, to sanction PHH for its breach of the Debtor Current Orders in the Gravel and Beaulieu cases; third, there are specific dollar amount caps which set the outer limits of "modest," or "less than serious," sanctions; fourth, those caps may be adjusted to correlate to the present value of those dollar amounts; fifth, this Court has the authority to impose punitive sanctions on PHH for its Rule 3002.1 and Court Order violations, provided the amount of the sanction imposed in each case does not exceed the caselaw-defined cap for a non-serious sanction; and sixth, based on the facts and circumstances of these cases, it serves the interests of justice for PHH to pay the sanctions for its Rule 3002.1 violations to the, chapter 13 Trustee and to pay the sanctions attributable to its violations of Debtor Current Orders to Legal Services Vermont.

[601 B.R. 913]

Accordingly, IT IS HEREBY ORDERED that:

(1) The following sanctions are imposed on PHH:

(a) in the Gravel case, a sanction of one hundred seventy-five thousand dollars ($175,000),

(b) in the Beaulieu case, a sanction of one hundred thousand dollars ($100,000), and

(c) in the Knisley case, a sanction of twenty-five thousand dollars ($25,000).

(2) (a) PHH shall pay to the chapter 13 Trustee the portion of each sanction imposed for PHH's violation of Bankruptcy Rule 3002.1:

(i) in the Gravel case, twenty-five thousand dollars ($25,000),

(ii) in the Beaulieu case, twenty-five thousand dollars ($25,000), and

(iii) in the Knisley case, twenty-five thousand dollars ($25,000), within fourteen (14) days of entry of this Order.

(b) PHH shall pay to Legal Services Vermont the portion of each sanction imposed for PHH's violation of Debtor Current Orders:

(i) in the Gravel case, one-hundred fifty thousand dollars ($150,000), and

(ii) in the Beaulieu case, seventyfive thousand dollars ($75,000)

within fourteen (14) days of entry of this Order.

SO ORDERED.

## FootNotes

1. In the interest of simplicity, all docket references in this decision cite to the Gravel case docket only; all documents, however, can be found in all three chapter 13 bankruptcy cases.

2. As will be discussed in detail below, the District Court focused on the total sanctions awarded in all 3 cases: $300,000 for violation of Court Orders, and $75,000 for violations of Rule 3002.1, rather than on the sanctions awarded in each case. See discussion at Part D.

3. The final paragraphs of the Remand Decision stated:

... [t]his court concludes that the statutory and inherent powers of the Bankruptcy Court are not sufficient to support the Bankruptcy Court's imposition upon PHH of $300,000 in punitive sanctions. The court notes that this conclusion does not leave Bankruptcy litigants free to engage in contemptuous conduct with impunity.... [The Bankruptcy Court] may take steps to enforce its orders short of punitive sanctions of the scope and type imposed in these cases.

(doc. #104, pp. 16-17) (emphasis added).

4. Although the Trustee provided evidence that PHH sent incorrect mortgage statements to the Debtors over a period of years, in the interest of simplicity and to provide PHH the benefit of the doubt that it would fulfill its pledge to alter its procedures after the first sanction was imposed against it in the Gravel case (doc. #49, entered Mar. 31, 2014), this Court arrived at the number of sanctionable Rule 3002.1 violations, for purposes of the Sanctions Decision, by computing the number of months from the date of its previous sanction against PHH to the monthly statements sent in May 2016. The 25 months yielded by this calculation was the basis for the Rule 3002.1 sanctions imposed against PHH in each of the three cases (doc. #82, p. 10).

5. These fears are not without rational basis. It is well-documented that mortgage lenders have admitted to foreclosing on mortgage loans based on erroneous records. See, e.g., Ranae Merle, Wells Fargo Admits it Incorrectly Foreclosed on 545 Homeowners It Should have Helped, THE WASHINGTON POST, (Nov. 6, 2018), https://www.washingtonpost.com/business/2018/11/06/wells-fargo-admits-it-incorrectly-foreclosed-homeowners-it-should-have-helped/?utm_term=.ca5d432cd9a5.

6. Though not disturbed, the District Court did not discuss the factor considering a sanctioned party's financial resources and ability to pay, so this Court addresses it below. See discussion at Part C(3).

7. All citations to statutory sections refer to Title 11, United States Code (the "Bankruptcy Code"), unless otherwise indicated.

8. Report of the Advisory Committee on Rules of Bankruptcy Procedure, Bankruptcy Rules Committee Report, p. 6 (May 2009), https://www.uscourts.gov/rules-policies/archives/committee-reports/advisory-committee-rules-civil-procedure-may-2009.

9. Advisory Committee on Rules of Bankruptcy Procedure, Subcommittee on Consumer Issues, Memorandum on Comments to Proposed Rules 3001(c) and Rule 3002.1, p. 12 (Apr. 7, 2010), https://www.uscourts.gov/sites/default/files/fr_import/BK2010-04.pdf [hereinafter 2010 Committee Memo].

10. In its Memorandum on Remand, PHH characterizes the Advisory Committee's reports and minutes as "legislative history." See, e.g., doc. #127, p. 18. While the Federal Bankruptcy Rules "are a legislative enactment" and should be interpreted using the "traditional tools of statutory construction," any pertinent legislative history is still confined to the reports, hearing transcripts, and statements generated by Congress and its various committees. See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 163-65, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (interpreting the Federal Rules of Evidence). Nevertheless, while not constituting legislative history per se, the Advisory Committee materials are "particularly relevant in determining the meaning of the document Congress enacted," especially where Congress does not address or amend the Advisory Committee's draft in any meaningful way on the question at hand. Id. at 165 n. 9, 109 S.Ct. 439.

11. In the context of international bankruptcy cases, until the passage of BAPCPA in 2005, 11 U.S.C. § 304(b) granted a bankruptcy court the power to:
(1) enjoin the commencement of —
(A) any action against —
(i) a debtor with respect to property involved in such foreign proceeding; or
(ii) such property; or
(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;
(2) order other appropriate relief.

12. PHH also recognized the value of considering decisions analyzing Rule 37 sanctions to resolve the Rule 3002.1 issue. See doc. #127, p. 20 ("Accordingly, case law germane to Rule 37(c)(1) is of particular and dispositive relevance to the analysis here, particularly given the interpretation of substantively identical language.").

13. Rule 37(b)(2)(A) provides, in the event a party does not obey a discovery order, "the court where the action is pending may issue further just orders," including those specifically enumerated in (i)-(vii) such as striking pleadings, dismissing the action, or entering a default judgment.

14. See discussion at Part B.

15. An injunction is "[a] court order commanding or preventing an action." BLACK'S LAW DICTIONARY (11th ed. 2019). See also Edgar v. MITE Corp., 457 U.S. 624, 649, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) (Stevens, J., concurring) ("An injunction restrains conduct. Its effect is normally limited to the parties named in the instrument.").

16. In favoring the "narrower construction" adopted by the Fifth, Sixth, and Ninth Circuits, and rejecting the more expansive view of the First and Eighth Circuits, the District Court found that "[t]his narrower construction is also consistent with the direction of Second Circuit precedent addressing the scope of the Bankruptcy Court's contempt authority in other contexts" (doc. #104, p. 16). It grounds this finding in the Second Circuit case of Kalikow (In re Kalikow), 602 F.3d 82 (2d Cir. 2010). The District Court states that while this case "is not directly controlling," it "suggests that a more limited view of the scope of the Bankruptcy Court's power to impose punitive sanctions would prevail in the Second Circuit" (doc. #104, p. 16). With all due respect to the District Court, this Court perceives the Kalikow case to be of marginal value in predicting a Second Circuit determination of the issue at bar. In that case, the Second Circuit holds only that § 105 cannot serve as a sole or independent basis for a bankruptcy court's imposition of sanctions, instructing that § 105 authority may be invoked only if the offending party violated another provision of the Code. Id. at 97. Here, PHH violated Rule 3002.1, which implements § 1322(b)(5) of the Bankruptcy Code.

17. The only circuit case, of the three cited by the District Court, that can be read to categorically prohibit bankruptcy courts from imposing any amount of punitive sanctions is the Fifth Circuit's decision in In re Hipp, Inc., 895 F.2d 1503 (5th Cir. 1990). Support of this reading from within the circuit can be found in In re Rodriguez, 2007 WL 593582, 2007 U.S. Dist. LEXIS 11858 (W.D. Tex. 2007), where the district court vacated a bankruptcy court's $15,000 punitive fine imposed on an individual. In doing so, the court pointed to the Fifth Circuit's "rather expansive view of sanctions classifiable as criminal contempt," specifically circuit cases "holding that a fine of as little as $500 for failure to appear constitutes criminal contempt." Id. at *14-15, 2007 U.S. Dist. LEXIS 11858 at **43-45. But see Kamatani v. BenQ Corp., 2005 WL 2455825, at *15, 2005 U.S. Dist. LEXIS 42762, at *46 (E.D. Tex. 2005) (imposing a "modest" $500,000 contempt sanction under its inherent powers without characterizing it as criminal contempt).

18. The Richards court writes that, in addition to the Ninth Circuit, the Fifth Circuit "allow[s] bankruptcy courts to award relatively minor noncompensatory fines." In re John Richards Homes Bldg. Co., 552 F.App'x 401, 415 (6th Cir. 2013) (citing In re Hipp, Inc., 895 F.2d 1503, 1509-21 (5th Cir. 1990)). By contrast, the Hipp decision does not include language allowing for that possibility or recognizing the inherent power of bankruptcy courts to impose even non-serious punitive sanctions.

19. The Second Circuit has also recognized, however, "that the requirements of due process cannot be cabined within an inflexible regime, and must vary with each case." Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 270 (2d Cir. 1999). Specifically, "in the Rule 37 context," which served as a model for Bankruptcy Rule 3002.1, the Reilly court "declined to impose rigid requirements on either the timing or the form of the notice afforded to a sanctioned party." Id.

20. The $10,000 sanction, which was imposed on an individual and triggered the need for procedural protections in June of 1998, would correspond to $15,711.17 in 2019 dollars. See United States Bureau of Labor Statistics, CPI Inflation Calculator, available at https://www.bls.gov/data/inflation_calculator.htm (last visited June 24, 2019) (hereinafter CPI Inflation Calculator). In adjusting a given sanction amount to its 2019 equivalent value, this Court relies upon the Bureau of Labor Statistics' Consumer Price Index (CPI) Inflation Calculator, the same tool utilized by the Supreme Court and the Second Circuit Court of Appeals. See, e.g., Janus v. AFSCME, Council 31, ___ U.S. ___, 138 S.Ct. 2448, 2483, 201 L.Ed.2d 924 (2018); Falzon v. JPMorgan Chase & Co., 501 Fed. Appx. 92, 94 n. 1 (2d Cir. 2012).

21. The apparently modest $10,000 sanction, in the Muniz case to which the Supreme Court referred, was imposed in 1975 and would correspond to $27,611.94 in 1994 dollars — far shy of $52 million; it would amount to $47,778.36 in 2019 dollars. See CPI Inflation Calculator, supra note 20.