WRIGHT, FINLAY & ZAK, LLP
Darren T. Brenner, Esq.
Nevada Bar No. 8386
Ramir M. Hernandez, Esq.
Nevada Bar No. 13146
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
(702) 475-7964; Fax: (702) 946-1345
rhernandez@wrightlegal.net
*Attorneys for PHH Mortgage Corporation as Successor by Merger to Ocwen Loan Servicing, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>CHRISTOPHER MICHAEL MARINO, and VALERIE MARGARET MARINO,<br><br>Debtors | Case No.: 13-50461-BTB<br><br>Chapter 7<br><br>**REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM JUDGMENT OR ORDER (RULE 9024) AND FOR NEW EVIDENTIARY HEARING**<br><br>**Hearing Date:  February 19, 2021**<br>**Hearing Time:  10:00 a.m.** |

PHH Mortgage Corporation, as successor by merger to Ocwen Loan Servicing, LLC ("PHH"), hereby replies to Debtor's Opposition to Motion for Relief from Judgment or Order (Rule 9025) and for New Evidentiary Hearing [ECF No. 181].

**I.    INTRODUCTION**

Debtors' Opposition struggles to articulate any legal basis for denying PHH's requested relief.  Debtors first incorrectly argue that the court cannot retroactively apply the objective standard of review for contempt proceedings declared by the U.S. Supreme Court in *Taggart v. Lorenzen,* 139 S.Ct. 1795 (2019).   Debtors believe the Supreme Court's earlier decision in *Chevron Oil Co. v. Huson* prohibited the retroactive application of a new statute that created a

1

new statute of limitations that affected the rights of the parties; *Chevron Oil* is inapplicable because *Taggart* did not involve a new statute. Instead, the Supreme Court stated what the correct *existing* standard should be for determining whether claimed discharge violations under the *existing* statute constitutes a contempt. Such cases always have a retroactive effect, as they are simply declaring what the statute meant, not creating new law.[1] This is true especially when, as is the case here, the case has not yet been finally adjudicated, as this case presently is.

Debtors' second gambit is to claim that Rule 60 is not an appropriate vehicle to set aside the prior judgment. This argument ignores the numerous authorities establishing that intervening case law is a proper basis for such relief as set forth in PHH's motion. Debtors' Opposition provides no contrary authority and merely restates the general standard for such motions in their opposition. Debtors' lack of supporting authorities for their Opposition is telling. PHH is indeed entitled to relief because *Taggert* is intervening and controlling precedent.

Moreover, the Ninth Circuit recently issued a published decision in a separate dispute between PHH and Mr. Marino involving the same loan and similar claims that the bankruptcy court discharge gave rise to PHH's liability (there, under the Fair Credit Reporting Act). The Ninth Circuit rejected the claims and held PHH was fully within its rights to pull Debtors' credit to consider them for foreclosure alternatives despite their discharge and claimed surrender of the home. *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 676 (9th Cir. 2020). If it was appropriate for PHH to consider Debtors for foreclosure alternatives, then it was necessarily also proper for PHH to send correspondence to them that related to those alternatives. In this regard, at least a significant portion of this Court's reasoning at the first evidentiary hearing has been at least tacitly rejected by the Ninth Circuit. The Court therefore needs to conduct another evidentiary hearing to consider whether (or, at least, to what extent) Debtors can recover sanctions in light of the Ninth Circuit's published decision that contradicts one of their primary arguments in this case.

For these reasons, this Court should grant PHH's motion and its request for a new

---

[1] *See Rivers v. Roadway Express*, 511 U.S. 298, 313 n.12, 114 S. Ct. 1510, 1519 (1994).

evidentiary hearing.

## II. LEGAL ARGUMENT

**A. The Supreme Court in *Taggart* did not create a new standard, rather it determined *the proper existing* standard for discharge violations.**

Debtors' Opposition argues that the Supreme Court's decision in *Chevron Oil Co. v. Huson*[2] prohibits retroactive application of *Taggart*, but this argument misses the mark. *Chevron Oil* stands for the proposition that the retroactive application of a new state statute of limitations was inequitable because it gave no notice to the plaintiff that "he slept on his rights" when he could not have possibly known that there was a time limitation.[3] Debtors assert that this general rule of thumb precludes application of *Taggart* to their case. Moreover, Debtors assert that *Harper v. Virginia Dept. of Taxation*,[4] which PHH cites in its Motion, does not support a contrary result as that case held that retroactivity only applied to the case at hand and not all other similarly affected cases. Debtors are wrong on both counts.

First, the present case is not one in which the Debtors have had their procedural rights impacted by a new statute. Instead, the Supreme Court in *Taggart* corrected the standard of review the bankruptcy applied so that it conformed to the way *it should have always been applied*. As the Supreme Court stated: "The bankruptcy statutes, however, do not grant courts unlimited authority to hold creditors in civil contempt. Instead, as part of the "old soil" they bring with them, the bankruptcy statutes *incorporate the traditional standards* in equity practice for determining when a party may be held in civil contempt for violating an injunction."[5]

Moreover, in *Rivers v. Roadway Express*, the Supreme Court held that when a court interprets a statute "it is explaining its understanding of what the statute has meant continuously since the date when it became law."[6] In *Ditto v. McCurdy*, the Ninth Circuit similarly held that retroactive application is the general rule when the Supreme Court imposes a new standard for

---

[2] 404 U.S. 97, 108, 92 S. Ct. 349, 356 (1971).
[3] *Id.*
[4] 509 U.S. 86, 113 S. Ct. 2510 (1993).
[5] 139 S.Ct. at 1801 [emphasis added].
[6] 511 U.S. 298, 313 n.12, 114 S. Ct. 1510, 1519 (1994).

3

all active cases and noted that it had applied that rule in numerous instances.[7] Indeed, as pointed out in the instant Motion, the Ninth Circuit BAP recently applied just that analysis in *In Re Freeman*, remanding the case because the bankruptcy court did not apply *Taggart*.[8]

Instead, the Supreme Court in *Taggart* simply set *the* correct standard for post-discharge violations for all present and future cases. Specifically, the Supreme Court held that the standard was basically an objective one and that "[a] court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order."[9] The Court also held that the Ninth Circuit's prior, *subjective* standard was incorrect and remanded the case for further proceedings.[10] On remand, the Ninth Circuit acknowledged that it was "tasked with revisiting this case and applying this new standard."[11] This Court is similarly so tasked.

The Debtors' complain that requiring this Court to obey the Supreme Court's directive would be unfair because the original contempt order has been in place for several years. That is irrelevant: contrary to Debtors' claim, the contempt order was *not* a final judgment.[12] As held in *Wasserman v. Mun. Court of Alhambra Judicial Dist.*, as long as a case is still pending below, a federal court must apply a new and supervening rule when applicable to the issues of the

---

[7] 510 F.3d 1070, 1076 (9th Cir. 2007)("Moreover, this circuit has applied [the new rule] itself retroactively in numerous cases")(noting also, at 1077, n.5, that *Harper* effectively overruled *Chevron Oil*: "[T]he legal imperative 'to apply a rule of federal law retroactively after the case announcing the rule has already done so' must 'prevai[l] over any claim based on a Chevron Oil analysis.'").

[8] *See*, *In re Freeman*, 608 B.R. 228, 234 (B.A.P. 9th Cir. 2019)("Given the change in controlling law [Taggart], we must vacate the decision and remand for a decision under the standard now required by the Supreme Court.").

[9] *Id.* at 1804.

[10] *Id.*

[11] *In re Taggart*, 2020 U.S. App. LEXIS 37340, *14, 980 F.3d 1340, 69 Bankr. Ct. Dec. 144 (9th Cir. November 24, 2020).

[12] Ironically, the reason a final judgment was not entered was because Debtors were not satisfied with just getting this Court's damages award and appealed this Court's refusal to impose punitive damages. The BAP granted their wish and remanded the case for further proceedings, which also led to the Ninth Circuit's dismissing PHH's appeal as premature because a final adjudication had not yet been entered.

1 case.[13] Therefore, Debtors' complaint over the timeliness of the motion is irrelevant because no
2 final judgment has yet been entered in this matter. Debtors provide no contrary authority.

3 Notably, Debtors' Opposition skirts around the question of what standard this Court
4 applied in making its original finding of contempt, presumably hoping to avoid the clear
5 rejection in *Taggart* of the use of a standard akin to strict liability.[14] Were Debtors' correct that
6 the Supreme Court's objective test could not be applied "retroactively," they would essentially
7 be conceding that the prior *subjective* test should have been applied instead. The Opposition
8 seeks to avoid that unpalatable (to Debtors) alternative by pointing out that the Ninth Circuit's
9 original opinion in *Taggart* also was handed down after this Court's contempt order and also
10 should not be applied retroactively. Unfortunately for Debtors, though, not only is their
11 retroactivity analysis incorrect (as stated above) but, more significantly, the Ninth Circuit had
12 already adopted the subjective standard long before either *Taggart* or this Court's order. As the
13 Ninth Circuit held in its original opinion in *Taggart*, it was bound by its clear, prior ruling in the
14 case of *In re ZiLOG, Inc.*, (9th Cir. 2006) 450 F.3d 996, 1009, fn. 14 to the effect that "the
15 creditor's good faith belief that the discharge injunction does not apply to the creditor's claim
16 precludes a finding of contempt, even if the creditor's belief is unreasonable."[15] However, PHH
17 recognizes, even if Debtors refuse to do so, that this Court is now required to apply the Supreme
18 Court's *Taggart* test and base its findings of facts and conclusions of law on this new standard
19 rather than simply rely on its prior finding of contempt. The fairest way to do so is through an
20 evidentiary hearing so that the Court can look at the case with fresh eyes, with the *Taggart* test
21 firmly in mind.
22 /./././
23 /./././
24

---

[13] *See*, *Wasserman v. Mun. Court of Alhambra Judicial Dist.*, 543 F.2d 723, 725 (9th Cir. 1976)("So long as the case is *sub judice*, a federal court must apply a new and supervening rule of federal law when applicable to the issues in the case.").
[14] 139 S.Ct. at 1803-04. No one contends that this Court applied the subjective standard to its original determination.
[15] (9th Cir. 2018) 888 F.3d 438, 444.

5

**B. Rule 60 relief is an appropriate vehicle for the Court to apply the correct standard.**

**1. The Rule 60 Motion is timely.**

Debtors' claim that the current motion is untimely is not supported by the rules or existing case law. Rule 60(c) provides that a motion must be made in a reasonable time, and for subsections (1)-(3), no more than a year. PHH did not move for relief under those sections, so the one year time limit is inapplicable. Notwithstanding, PHH's Motion was filed in far less than a year from the Ninth Circuit ruling and within a month of the reopening of the bankruptcy. Moreover, the Court has yet to enter a final judgment. Debtors provide no case law or support for their proposition that the instant motion is untimely other than claiming PHH "could have re-open this case on its own and at any time after the Ninth Circuit's dismissal of its appeal back in February 2020."[16] That is not the standard for timeliness but, in any event, considerations of judicial efficiency and economy made it more sensible to await Debtors' motion seeking punitive damages rather than to bring piecemeal proceedings.

**2. Rule 60 relief is appropriate because there of intervening case law and the case is still pending.**

Debtors also argue that Rule 60 is not a basis for relief. First, they incorrectly argue that new case law is not a basis for relief under subsection (b)(5).[17] The Rule explicitly states that a court may set aside a judgment based on earlier judgment that has been reversed or vacated or if applying the judgment prospectively is no longer equitable. As set forth in PHH's brief, a change in controlling law is absolutely a proper basis for Rule 60 relief.[18] Debtor provides no citation to a case rejecting a change in the law as a basis, nor do they offer any challenge PHH's authorities.

Debtors also claim that relief is not warranted under subsection (b)(6) because

---

[16] ECF No. 181 at 6:20-25.
[17] *Id.* at 6:2-11.
[18] *See*, *Horne v. Flores*, 557 U.S. 433, 447;129 S. Ct. 2579, 2593 (2009)( "[T]he Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'"); *see also*, *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004)(holding that to obtain Rule 60 Relief, a movant must present new evidence, identify a change in controlling law, or identify a clear error).

6

intervening case law is not an extraordinary circumstance.[19] It is difficult to imagine how a Supreme Court ruling that the Ninth Circuit was employing the wrong standard in imposing contempt could not be viewed as extraordinary circumstances warranting relief. Again, PHH presented authorities in its Motion that an intervening change in the governing case law— particularly by the Supreme Court--can certainly constitute circumstances warranting relief under Rule 60(b)(6).[20] Here, too, Debtors fail to provide any citations to any contrary authority. Rule 60 is therefore an appropriate vehicle through which this Court can grant relief.

### C. Debtors concede this Court has not yet applied the *Taggart* standard to PHH's conduct.

Debtors do not dispute that this Court never applied the Taggart test to the conduct of PHH that gave rise to the original contempt order. Instead, they argue that the *Taggart* "crafted a simpler standard for courts in the Ninth Circuit to hold creditors in contempt."[21] The implication of this argument is that the new standard would necessarily favor Debtors' position and therefore the Court should not disturb its prior ruling. Debtors' conclusion operates under the false assumption that this Court had applied a more favorable standard than the *Taggart* test in originally finding PHH in contempt. The record does not support Debtors' view and, to the contrary, reflects that the Court seems to have applied a standard akin to strict liability. In this regard, the Ninth Circuit on remand in *Taggart*, citing to the Supreme Court's decision, held that "[c]ivil contempt is a "severe remedy" and, correspondingly, the Supreme Court has set a significantly high hurdle for when it is imposed."[22] Further, the court pointed out that "[t]he standard is rooted in the concept that "basic fairness requir[es] that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt."[23] In other words, rather than softening the standard that should be applied in determining whether PHH's conduct amounted to a contempt, *Taggart* actually affirmed there was still a high burden of proof

---

[19] ECF No. 181 at 6:13-18.
[20] *Henson v. Fidelity National Financial, Inc.*, 943 F.3d 434, 452 (9th Cir. 2019).
[21] *See* ECF NO. 181 at 6:9-10.
[22] 2020 U.S. App. LEXIS 37340, *14 (9th Cir. November 24, 2020)(internal citations omitted).
[23] *Id.*

that Debtors must meet.

Thus, contrary to Debtors claim, *Taggart* does not authorize a "rubber stamp" of this Court's prior ruling. In fact, the Ninth Circuit rejected such an approach on remand, holding:

> The question for us, however, is not whether Taggart actually "returned to the fray" in the Oregon state court litigation. Nor is it whether the Creditors had an objectively reasonable basis for concluding that Taggart had "returned to the fray." Rather, the question is whether the Creditors had some—indeed, *any*— objectively reasonable basis for concluding that Taggart *might have* "returned to the fray" and that their motion for post-petition attorney's fees *might have* been lawful.[24]

Debtors present no facts or arguments that this Court applied either the *Taggart* test or even a more stringent standard here. As such, this Court must apply the *Taggart* test now and freshly examine the facts presented in the case, as the Ninth Circuit did on remand in *Taggart*, and then apply the proper standard in determining whether sanctions are warranted in this instance. This will require specific findings and conclusions of law not ready made in the Court's prior order.

The recent opinion of *In re City of Detroit* explained the required steps to find a contempt arising out of a claimed discharge violation post-*Taggart*:

> But after the Supreme Court's 2019 decision in *Taggart*, more is required. As a recent decision of the Sixth Circuit Bankruptcy Appellate Panel accurately described it, [I]n *Taggart v. Lorenzen*, —— U.S. ——, 139 S. Ct. 1795, 204 L.Ed.2d 129 (2019), the United States Supreme Court ... clarified the standard that applies when a violation of the discharge injunction is alleged. The Court held that a creditor may only be held in civil contempt for violation of the discharge order "if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." 139 S. Ct. at 1799. "[C]ivil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* In other words, there is no fair ground of doubt when the creditor violates a discharge injunction "based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id.* at 1802. A "creditor's good faith belief" that the discharge injunction does not

---

[24] *Id.* at 15-16 (emphasis in original).

> apply to the creditor's act that violated the discharge injunction does not by itself preclude a civil contempt sanction. *Id.* Conversely, it is not sufficient to hold a creditor in civil contempt [merely] by finding that "the creditor was aware of the discharge order and intended the actions that violated the order." *Id.* at 1803.
> *Orlandi v. Leavitt Family Ltd. P'ship* (*In re Orlandi* ), 612 B.R. 372, 382 (6th Cir. BAP 2020) (italics in original).
>
> To summarize, after *Taggart* , the elements that must be proven for a court to find a party in civil contempt are that (1) the party violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts; (2) the party did so with knowledge of the court's order; and (3) there is no fair ground of doubt as to whether the order barred the party's conduct — *i.e.* , no objectively reasonable basis for concluding that the party's conduct might be lawful. And at least as to the first two of these elements, the moving party must prove them by clear and convincing evidence.[25]

The court then proceeded to analyze each factor in rendering its ruling finding that, under the *Taggart* test, there was a contempt under the facts of that case. Similarly here, this Court must apply *Taggart* to determine whether PHH's putative violations rise to the level of a contempt.

In so doing, the Court should find that, at least as to most of the conduct Debtors complained of, PHH had fair grounds for believing that its conduct *did not* violate the discharge injunction, particularly (though not exclusively) when it sent Debtors required loss mitigation documents. In this regard, the Ninth Circuit has specifically held that PHH did not violate the Fair Credit Reporting Act in reporting of Mr. Marino's credit account; observing that, notwithstanding Mr. Marino's claim that he had surrendered the property in bankruptcy: "Ocwen was permitted to review the plaintiffs' accounts—and their credit reports—to determine whether it could offer them alternatives to foreclosure."[26]

In this case, Debtors' chief complaint against PHH is that it sent the Marinos communications even though they had "surrendered" the property and received a bankruptcy discharge. Debtors thus essentially contend that the discharge was a directive for PHH to leave

---

[25] (Bankr. E.D. Mich. 2020) 614 B.R. 255, 265-66.
[26] *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 676 (9th Cir. 2020).

them alone and not bother them about anything to do with the Property. However, the Ninth Circuit's ruling against Mr. Marino makes clear there was an objectively reasonable basis for PHH to believe that it was entitled to contact the Debtors because Debtors continued to be the record owners of the home and might prefer to accept foreclosure alternatives:

> In evaluating the plaintiffs for eligibility for alternatives to foreclosure, Ocwen would have been reviewing the plaintiffs' outstanding accounts and attempting to collect the value of the collateral, which it was permitted to do even after the plaintiffs received discharges. Thus, even if the plaintiffs did not request alternatives to foreclosure, Ocwen could have explored those options and, if the plaintiffs qualified for an alternative, presented them with an offer in lieu of foreclosure. [27]

The Ninth Circuit also explained that the Debtors surrender of their property in bankruptcy was irrelevant:

> …we will assume that the plaintiffs vacated their homes. We will also assume that, by "surrendered," the plaintiffs mean that they expressed no interest in contesting or avoiding foreclosure. Still, it does not follow that Ocwen did not have a reason to review their accounts to determine if they qualified for alternatives to foreclosure. Ocwen could have reasonably thought that even a debtor that moved out of his or her home might be interested in returning if Ocwen made a sufficiently attractive offer. Thus, Ocwen was permitted to review the plaintiffs' accounts—and their credit reports— to determine whether it could offer them alternatives to foreclosure. [28]

These findings contradict the Debtors' position and this Court's related order. The Debtors argued: "if they were still residing there or intending to keep the property, [Ocwen/PHH's] statements would be permissible. But since they have not lived there for years, the statements are not permissible."[29] Consistent with the Debtors' argument, this court held:

> I don't think Ocwen, or any creditor, is allowed, when they know that the debtor has filed bankruptcy, and when they know that the

---

[27] *Id.* at 675-76.
[28] *Id.*
[29] *See* ECF No. 40 at 1:26-2:5.

>    debtor has received a discharge, and they knew the debtor has said they're going to surrender the house, has the right to have their computer gen out these various letters…[30]

While PHH does not claim this was the entire sum of the court's reasoning, the Ninth Circuit has since held the bankruptcy, the discharge, and the surrender did not prohibit Ocwen from reaching out to the Debtors. The Ninth Circuit's is binding precedent that was not available at the time of the evidentiary hearing, and likely amounts to issue preclusion.[31] As explained by PHH's corporate witness at the first evidentiary hearing, "notwithstanding a bankruptcy discharge" the Debtors "still have the ability to discuss loss mitigation options with Ocwen."[32] Simply put, if Ocwen was permitted to consider Debtors for foreclosure alternatives, it necessarily had an objectively reasonable basis to believe that it could communicate with them about those alternatives. In other words, the Ninth Circuit's decision in the FCRA case demonstrates why the proper standard of review confirmed in *Taggert* matters. Consideration of Debtors for foreclosure alternatives provided an objectively reasonable basis to communicate with Debtors so there were fair grounds for PHH believing that its conduct *did not* violate the discharge injunction here.

**D. PHH's requested remedy of a new evidentiary hearing is appropriate.**

In light of the intervening change in the case law, PHH's request for a new evidentiary hearing is appropriate. As noted above, *Taggart* now requires this Court to 1) apply the correct standard (the objective one of "no fair grounds") to determine whether and to what extent a discharge violation occurred here; 2) apply a subjective test to assess the appropriate damages; and 3) determine the extent to which punitive damages might be appropriate. A new evidentiary hearing would allow this Court to examine all of the evidence afresh and apply the proper

---

[30] Exhibit D, Transc. from June 20, 2016 hearing at 7:24-8:4.
[31] *See Gamble v. Overton* (*In re Overton*), Nos. 08-00084-TLM, 08-06033-TLM, 2009 Bankr. LEXIS 478, at *25 (Bankr. D. Idaho Jan. 26, 2009)(holding that dismissal of bankruptcy claims on issue preclusion was valid); also, *Frye v. Excelsior Coll.* (*In re Frye*), No. CC-08-1055-PaMkK, 2008 Bankr. LEXIS 4686, at *12-14 (B.A.P. 9th Cir. Aug. 19, 2008)("Therefore, the elements of issue preclusion that must be present for it to be applied to a federal court proceeding are: (1) the issue was actually decided by a court in an earlier action, (2) the issue was necessary to the judgment in that action, [*14] and (3) there was a valid and final judgment.").
[32] ECF No. 51-4 at 125:3-6.

standard. As in *Henson, supra,* a refusal to grant relief and apply the proper standard here would, under the circumstances be an abuse of discretion and inevitably lead to an appeal. Therefore, this Court should grant PHH's requested relief.

### III.   CONCLUSION

For the reasons set forth above, PHH respectfully requests that this Court grant its Motion for Relief and set the matter over for a new Evidentiary Hearing in its entirety.

Respectfully submitted

Dated: February 12, 2021

WRIGHT, FINLAY & ZAK, LLP

/s/ *Ramir M. Hernandez, Esq.*
Darren Brenner, Esq.
Nevada Bar No. 8386
Ramir M. Hernandez, Esq.
Nevada Bar No. 13146
rhernandez@wrightlegal.net
*Attorneys for PHH Mortgage Corporation as successor by merger to Ocwen Loan Servicing, LLC*

# CERTIFICATE OF SERVICE

1. On February 12, 2021, I served the following document(s):

   **REPLY TO OPPOSITION TO MOTION TO CONTINUE EVIDENTIARY HEARING UNTIL AFTER RULING ON MOTION FOR RELIEF FROM JUDGMENT**

2. I served the above-named document(s) by the following means to the persons as listed below:

   (Check all that apply)

   ■ a. ECF System (You must attach the "Notice of Electronic Filing", or list all persons and address and attach additional paper if necessary)

   SETH J. ADAMS on behalf of Creditor DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR GMACM MORTGAGE LOAN TRUST
   sadams@woodburnandwedge.com, jgoff@woodburnandwedge.com

   CHRISTOPHER PATRICK BURKE on behalf of Debtor CHRISTOPHER MICHAEL MARINO
   atty@cburke.lvcoxmail.com

   CHRISTOPHER PATRICK BURKE on behalf of Debtor CHRISTOPHER MICHAEL MARINO
   attycburke@charter.net

   CHRISTOPHER PATRICK BURKE on behalf of Joint Debtor VALERIE MARGARET MARINO
   atty@cburke.lvcoxmail.com

   CHRISTOPHER PATRICK BURKE on behalf of Joint Debtor VALERIE MARGARET MARINO
   attycburke@charter.net

   W. DONALD GIESEKE
   wdg@renotrustee.com, dgieseke@ecf.axosfs.com

   RAMIR M. HERNANDEZ on behalf of Creditor PHH MORTGAGE SERVICES, FORMERLY KNOWN AS OCWEN LOAN SERVICING, LLC
   rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

   DANA JONATHON NITZ on behalf of Creditor OCWEN LOAN SERVICING LLC
   dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

U.S. TRUSTEE - RN - 7
USTPRegion17.RE.ECF@usdoj.gov

☐ b.   United States mail, postage fully pre-paid (List persons and addresses. Attach additional paper if necessary)

☐ c.   Personal Service (List persons and addresses. Attach additional paper if necessary)

I personally delivered the document(s) to the persons at these addresses:

_____

☐   For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐   For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d.   By direct email (as opposed to through the ECF System) (List persons and email addresses. Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e.   By fax transmission (List persons and fax numbers. Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ f.   By messenger (List persons and addresses. Attached additional paper if necessary)

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service. (A declaration by the messenger must be attached to the Certificate of Service).

I declare under penalty of perjury that the foregoing is true and correct.

Signed on Friday, February 12, 2021.

                                        */s/   Jason Craig*
                                        An employee of Wright, Finlay & Zak, LLP